## No. 12,957.

## F. MAY & CO. vs. CITY OF NEW ORLEANS.

### SYLLABUS.

1. Goods imported and remaining in the original boxes, or cases, or wrappings, in which shipped, are held to be, until sold by the importer, not subject to assessment and taxation for State and municipal purposes, being exempt under Art. 1, Sec. 10, par. 2 of Federal Constitution.

2. But goods taken from the original cases, or boxes, or wrappings, in which shipped and received by the importer, even though still remaining in the manufacturers' packages, become incorporated into the general mass of property of the State and subject to its tax laws.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Gurley & Mellen* for Plaintiffs and Appellees.

*Samuel L. Gilmore*, City Attorney, and *W. B. Sommerville*, Assistant City Attorney, for Defendant and Appellant.

Argued and submitted March 10, 1899.
Opinion handed down April 3, 1899.
Rehearing refused May 15, 1899.

The opinion of the court was delivered by

BLANCHARD, J. Plaintiffs are importers of merchandise. Their place of business and store is in the city of New Orleans. They were assessed for the year of 1897 on "merchandise, or stock in trade," at $2,500, and, under the printed heading on the assessment roll of "money loaned on interest, all credits and all bills receivable for money loaned or advanced, or for goods sold, and all credits of any and every description," they were assessed at the further sum of $1,000.

They refused to pay the city tax based on this assessment, on the ground that the same is void because in conflict with Article 1, Section 10, paragraph 2 of the Constitution of the United States.

Their position is that the merchandise and stock of goods carried by them in 1897 consisted of dry goods imported from foreign countries upon which duties were levied by the United States and paid by them; that the goods so imported were by them sold only in the unbroken original packages; and that the only credits and bills receivable appertaining to the firm were those representing sums due them on account of the sale as aforesaid of goods in the original packages.

They brought this action to have the assessment declared unconstitutional and void, and coupled with it a proceeding by injunction to restrain the city treasurer from attempting to enforce payment of the taxes.

The city answered by general denial, and, from a decree favorable to the plaintiffs, prosecutes this appeal.

The tax assessor appears to have arrived at the conclusion that part, at least, of the merchandise received by plaintiffs at their place of business, kept in stock there and sold during the year 1897, had lost its distinctive character of "goods in the original package," by the breaking of the packages in which imported, and that the contents of such packages so broken had become incorporated into the general mass of property in the State in such way as to become the objects of State and municipal taxation.

Accordingly, to reach and tax this part of their stock, he returned an assessment of $3500 in the aggregate against them.

The burden of proof is on plaintiffs, resisting the assessment and asserting exemption, to show that no part of their stock of merchandise is of a character rendering it subject to taxation, and that no portion of their credits or bills receivable were for goods sold which were subject to taxation.

If it appears from the evidence that they kept in stock and sold goods which must be considered, at the time of such keeping and sale, not to have been in the "original package" in the legal interpretation of that phrase; if the original packages, in which such goods were, had been broken, and merchandise taken therefrom, put in stock and sold, then are plaintiffs subject to this taxation.

It is established, we think, that plaintiffs imported a large quantity of merchandise; that such merchandise was bought for their account,

they were the parties ordering same, and to whom the goods were shipped, and in this sense were the vendees thereof; that the greater part, or from 60 to .65 per cent. of the merchandise so imported was purchased on import orders, or for customers whose orders they had taken; that the remainder was purchased for their own stock and sold as such out of their store; that the goods purchased on import orders (for those ordering same) as well as those purchased on stock orders (for their own store) would be shipped in large wooden cases; that a case would sometimes contain only the goods embraced in one order (that is to say, all for one firm or business house) and then it would be delivered to such firm or business house in the original package; that at other times a case would contain the goods to fill several orders of different firms and business houses, in which event the original package in which they were imported would be opened by the importer and the goods for the different orders sorted out, separated, and delivered to those ordering same; and that sometimes goods purchased on stock orders (for their own store) would be shipped in large cases, which when received by the importer would be opened and the goods taken out and put in stock and sold, but that such goods were only sold in the packages in which they were put up by the manufacturer— that is to say, a case would contain many packages, those packages would be taken out of the case, which was broken for the purpose, but the packages themselves would not be broken.

The business of plaintiffs, as importers, was, in this sense a wholesale business, selling only by the package as put up by the manufacturer; not a retail business because no package was broken and the individual articles of the same kind and make it contained were not sold separately.

Sometimes a case would contain goods purchased on import orders for customers and likewise goods purchased on stock orders for the importers themselves. When this was so, the case would be opened by the plaintiffs, who would take the goods purchased on the import orders and deliver same to their customers so ordering, and the goods purchased on the stock orders would also be removed from the case and sold as stock to those choosing to buy.

All the goods whether purchased on import orders or stock orders that came to plaintiffs, did so as the goods of F. May & Co.; they were the owners of same.

The goods plaintiffs kept in stock were for the most part bobbinet, and household linens, towels, sheetings, embroideries, laces, etc.

They dealt only in imported merchandise. The goods mentioned would be put up by the manufacturers in convenient packages. For instance, towels may be put up by the manufacturer in packages containing two, three, or five dozen to the package. But a large order for towels might include five hundred dozen towels. These would all come in one case done up in packages of (say) five dozen to the package. The importer would open the case, take these packages of towels out and sell them by the package. He would not break a package to sell one or more towels.

Conducting their business on this line plaintiffs claim to sell only in the original package.

The question, then, which the case really presents is—what is the "original package"?

Is it the package in which the goods are put up for convenience by the foreign manufacturer, or is it the case, the box, the covering in which the goods so put up by the manufacturer are packed for shipment? Is the manufacturer's package the original package in the legal interpretation, or must that be held to be the original package which is delivered to the carrier for transportation to the desired destination?

If the package put up by the manufacturer be the original package, then plaintiffs' objection to the assessment complained of is well taken.

If the case or box, in which the goods are placed for shipment, be the original package, then their case falls.

This court in State ex rel. Gelpi & Bro. vs. Board of Assessors, 46 La. Ann., 147, defined a package to be a "number of things bound together convenient for handling and conveyance;" "a bundle put up for transportation or commercial handling."

In the early and leading case of Brown vs. Maryland, 12 Wheat., 442, it was said that the thing imported "while remaining the property of the importer in his warehouse in the original form or package in which it was imported" was not subject to taxation under the prohibition of the Constitution.

In Low vs. Austin, 13 Wall., 34, it was said that "goods imported do not lose their character as imports and become incorporated into the mass of property of the State until they have passed from the control of the importer, or been broken up by him from their original cases."

In Keith vs. State (Ala.), 10 L. R. A.; 430, it was held that when intoxicating liquors are imported in small bottles, each of which is wrapped in paper and labeled "original package," the bottles being packed, for the purpose of facilitating the shipment, in an open box marked with the number and size of the bottles contained therein, the box, and not the bottle, is the original package.

To the same effect is State *ex rel.* Cockran vs. Winters (Kan.) 10 L. R. A., 616, where the package *as it existed at the time of its transportation* was taken to be the "original package."

Also Guckenheimer vs. Salls, 81 Fed. Rep., 997, where it was said that an original package appears to be the package delivered by the importer to the carrier at the initial place of shipment in the exact condition in which it was shipped, and that if afterwards this package be broken "it comes within the police regulations of the State"; and McGregor vs. Cone (Iowa) 39 L. R. A. 484, where it was said that the words "original package" had reference "to a unit which the carrier receives, transports and delivers as an article of commerce," and which when sold or broken after delivery ceases to be an article of interstate commerce, becomes a part of the common mass of property within the State and subject to its tax laws.

Other authorities of the same tenor might be cited, but these suffice to support the contention of the defendant that the "original package" in this case must be held to be that in which the goods were shipped to and received by the plaintiffs, and not the smaller packages put up by the manufacturer and packed within the case delivered to the carrier.

It follows that since many of the cases of goods received by plaintiffs were opened and the contents removed therefrom and sold after such removal by plaintiffs, the merchandise imported in such cases, so afterward broken as aforesaid, lost its distinctive character as objects of foreign commerce not subject, while remaining in the original case, to the police laws of the State, and thereafter, to-wit:—after the case was broken and the goods removed therefrom, became incorporated in the general mass of property in the State and thus subject to State and municipal taxation.

In the Gelpi case, *supra* (46 Ann.), it appearing that the larger part of the assessment of complainants was based upon imported goods never removed from the original cases in which shipped and held by them in such cases as "unbroken packages" for sale, we de-

cided that part of their stock not to be subject to assessment and taxation. The other part of their stock, however, representing goods removed from broken packages, was subject to assessment.

And so, in the instant case, the goods imported by plaintiffs and remaining in the original boxes, or cases, or wrappings in which. shipped, are held to be, until sold by the importer, not subject to assessment and taxation for State or municipal purposes; but the goods taken from the original cases, or boxes, or wrappings in which shipped, even though still remaining in the manufacturers' packages, are subject to assessment and taxation by defendant. Accordingly, the assessor having fixed upon $3,500 as the sum covering that portion. of plaintiffs' stock, and its proceeds, for the year 1897, so taken from the broken packages after importation, such assessment must be sustained.

It is, therefore, ordered and decreed that the judgment appealed from be annulled, avoided and reversed, that the demand of plaintiffs be rejected, their injunction dissolved, and their suit dismissed, with. costs in both courts.

MR. JUSTICE MONROE takes no part, as he was not a member of the court when this case was heard.

NOTE—This case has been taken to the Supreme Court of the United States by writ of error.