Points Decided.

(April 18, 1907.)

## PARKS BROS. & COMPANY, Appellants, v. NEZ PERCE COUNTY, Respondent.

[89 Pac. 949.]

Interstate Commerce—Original Package—Termination of Interstate Transportation—Taxing Power of the State—When Imported Goods may be Taxed.

1. Where goods were ordered by citizens of Idaho from wholesale merchants in San Francisco, and the goods were packed, boxed and shipped from San Francisco and consigned to the shippers at Ilo, Idaho, and received by them at their destination and removed from the depot or warehouse, and the boxes or cases were opened by them, and the separate packages or parcels were removed from the boxes or cases in which they were shipped, the goods have in such case ceased to be the subject of interstate transportation, and are subject to taxation under the revenue laws of this state.

2. Where goods have been shipped by the manufacturers or merchants from one state, and consigned to the shippers in another state, and are thereafter received by the shippers at the point of destination, and the boxes or cases in which the shipment was made are opened and the smaller and separate packages contained therein are removed therefrom, the goods are no longer imports, but thereupon become a part and parcel of the general body of the property of the state in which they are found and are subject to the taxing power thereof.

3. Under the facts of this case, the "original package" was the box or case in which the goods were packed and shipped into this state, and when the box or case was opened for the sale and delivery of the separate packages and parcels contained therein, and they were removed therefrom, the separate and individual parcels contained lost their distinctive character of imports or articles of interstate transportation, and become a part and parcel of the taxable property of this state.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District, for Nez Perce County. Hon. Edgar C. Steele, Judge.

From a judgment made and entered by the district court adjudging certain personal property to be the subject of

taxation under the revenue laws of this state, the plaintiff appealed. *Judgment affirmed.*

Anderson & Nickerson (Van W. Hasbrouck, of Counsel), for Appellants.

In making internal police and revenue regulations a state cannot impose taxes upon property imported into the state from abroad, or from another state, and not yet become part of the common mass of property therein, and no regulations can be made directly affecting interstate commerce. (*O'Neill v. Vermont,* 144 U. S. 323, 36 L. ed. 450, 12 Sup. Ct. Rep. 693; *Ascher v. Texas,* 128 U. S. 129, 32 L. ed. 368, 9 Sup. Ct. Rep. 1.)

Interstate commerce cannot be taxed at all by a state even though the same amount of tax should be laid as on domestic commerce. (*Robbins v. Taxing Dist. of Columbia,* 120 U. S. 489, 30 L. ed. 694, 7 Sup. Ct. Rep. 592; *Caldwell v. North Carolina,* 187 U. S. 622, 47 L. ed. 336, 23 Sup. Ct. Rep. 229; *Village of Cerro Gordo v. Rawlins,* 135 Ill. 36, 25 N. E. 1006; *Emmons v. City of Lewiston,* 132 Ill. 380, 22 Am. St. Rep. 540, 24 N. E. 58, 8 L. R. A. 328; *Walling v. Michigan,* 116 U. S. 446, 29 L. ed. 691, 6 Sup. Ct. Rep. 454; *Welton v. Missouri,* 91 U. S. 275, 23 L. ed. 347; *Ward v. Maryland,* 12 Wall. 418, 20 L. ed. 449; *Guy v. Baltimore,* 100 U. S. 434, 25 L. ed. 743; *Webber v. Virginia,* 103 U. S. 344, 26 L. ed. 565; *Brown v. Houston,* 114 U. S. 623, 29 L. ed. 257, 5 Sup. Ct. Rep. 1091; *Marshalltown v. Blum,* 58 Iowa, 184, 43 Am. Rep. 116, 12 N. W. 266; *State v. Furbush,* 72 Me. 494; *Tugman v. Chicago,* 78 Ill. 405.)

B. S. Crow, for Respondent.

Even "goods imported from other countries may be taxed by the state with other property when they have passed from the importer's hands, or have become a part of the general property of the state by the breaking up of the original packages." (1 Cooley on Taxation, p. 150, and cases cited.)

The original packages in the present case were the bundles as shipped by Parks Bros. from San Francisco consigned to

themselves in Culdesac. They were not the packages contained within these bundles.

the term "original package" was and is the package of the importer as it existed at the time of its transportation from one state to another. The whole subject has relation to commerce and to interstate commerce, and to nothing else; hence the word must mean the package as transported by the importer himself, or by his agent, either a common carrier or a private carrier for the purposes of commerce. (*State v. Winters,* 44 Kan. 723, 25 Pac. 236, 10 L. R. A. 616; *Keith v. State,* 91 Ala. 2, 8 South. 353, 10 L. R. A. 430; *Commonwealth v. Schollenberger,* 156 Pa. St. 201, 36 Am. St. Rep. 32, 27 Atl. 30, 22 L. R. A. 155; *McGregor v. Cone,* 104 Iowa, 465, 65 Am. St. Rep. 522, 73 N. W. 1041, 39 L. R. A. 484; *Haley v. State,* 42 Neb. 556, 47 Am. St. Rep. 718, 60 N. W. 962; *In re Harmon,* 43 Fed. 372.)

The box, case or bale in which the separate parcels or bundles were placed by the foreign seller, manufacturer, or packer is to be regarded as the original package; and when it reaches its destination for trade or sale and is opened for the purpose of using or exposing to sale the separate parcels or bundles, the goods lose their distinctive character as imports, and each parcel or bundle becomes a part of the general mass of property in the state and subject to local taxation. (*May v. New Orleans,* 178 U. S. 496, 44 L. ed. 1165, 20 Sup. Ct. Rep. 976, 51 La. Ann. 1064, 25 South. 959.)

AILSHIE, C. J.—The appellants are wholesale merchants, doing business in the city of San Francisco and receiving orders through their agents and by mail for teas, coffee, spices, etc., which they ship to their own address and there receive the goods and distribute them to the purchasers and collect the purchase price therefor. The facts and history of this transaction are fully set forth in the findings made by the trial court, which are as follows:

"The court finds as a matter of fact that the property assessed to Parks Brothers & Co. of San Francisco, Cal., was consigned to Parks Bros. & Co., in Nez Perce County,

was received by Parks Bros. & Co., said plaintiff, in said Nez Perce County, and was in said county opened by Parks Brothers & Co. in Nez Perce County, the contents of the original packages being separated and distributed to different parties in said Nez Perce County; that while said property was in the care, control and custody of said Parks Brothers & Co., in Nez Perce County, it was assessed by the assessor of said county.

"The court also finds that Parks Bros. & Co. are and were on the 12th day of August, 1905, wholesale grocers residing at and doing business in the City of San Francisco, State of California, and that they sold their goods through an agent who showed the purchasers samples and took orders for the goods, which orders were sent to plaintiff's house in the city of San Francisco, and there filled according to said orders; that the said goods were shipped to Ilo in Nez Perce County, consigned to the plaintiffs, and there received by their agent and delivered to the purchasers; that no goods were shipped except those which had previously been ordered, and that no other goods were sold at the place of delivery than those which had previously been ordered, and that the said goods were consigned to Parks Bros. & Co. for the only purpose of examination by the purchasers and collection by plaintiff of the amount to be paid; that the goods consisted of teas, coffees and spices, and the small packages were shipped together in a large box, as the packages for each individual being done up separately, and the large boxes containing small packages were broken at Ilo, the place of destination, and the contents delivered to purchasers in accordance with the orders previously given and filled in San Francisco; that the said property was assessed while in the care, control and custody of Parks Bros. & Co. in Nez Perce County at Ilo, the place of destination on the 12th day of August, 1905, by the assessor of Nez Perce County."

This litigation grows out of the fact that after the receipt of the goods at Ilo, in this state, and while the plain-

tiffs were delivering the goods to the purchasers, the tax collector of Nez Perce county assessed the property to appellants and demanded payment of the taxes under the revenue laws of this state.

There is no question as to the regularity of the assessment, provided the property had become a part of the taxable property of this state and was not protected by the commerce clause of the constitution of the United States and the act of Congress regulating interstate commerce. The appellants, Parks Bros., place their sole reliance on the contention that the taxation of these goods was a violation of sections 8 and 10 of article 1 of the constitution of the United States and the acts of Congress regulating commerce between states. The trial court, after making findings of fact, as hereinbefore set out, concluded as a matter of law that the property in question was subject to taxation within this state, and was properly assessed against the plaintiffs.

Considerable argument has been made upon the question as to where and when the sale of these goods took place, whether in California or Idaho. As we view the case, however, that question is of but slight importance. It is not out of place, though, to observe that the title to the property clearly rested in the vendors. They were still in possession and would retain the title until the purchase price was received by them. While there undoubtedly existed a contract between the plaintiffs and purchasers looking to the sale of this property, the transaction had not yet been closed, and the sale had not yet been consummated.

In *State v. O'Neil*, 58 Vt. 140, 56 Am. Rep. 557, 2 Atl. 586, the question arose as to where a sale of certain liquors had taken place, whether in the state of New York or Vermont. O'Neil had received orders by mail from various customers in Rutland, Vermont, and he filled these orders by shipping jugs of liquor by C. O. D. express to the various purchasers in Vermont, with instructions to the express company to deliver the goods if the purchasers accepted and paid for them; if not, to hold the goods and notify the consignor. In considering this question, the supreme court of Vermont

said: ''The goods were intrusted to the carrier to transport to the place of destination named, there to present them for acceptance to the consignee, and *if* he accepted them and paid the accompanying invoice and the transportation charges, to deliver them to him; otherwise, to notify the consignor and hold them subject to his order.   It is difficult to see how a seller could more positively and unequivocally express his intention *not* to relinquish his right of property or possession in goods until payment of the purchase price than by this method of shipment.   We do not think the case is distinguishable in principle from that of a vendor who sends his clerk or agent to deliver the goods, or forwards them to, or makes them deliverable upon the order of his agent, with instructions not to deliver them except on payment of the price, or performance of some other specified condition precedent by the vendee.   The vendors made the express company their agent in the matter of the delivery of the goods, with instructions not to part with the possession of them except upon prior or contemporaneous receipt of the price.   The contract of sale, therefore, remaining inchoate or executory while the goods were in transit, or in the hands of the express company, and could only become executed and complete by their delivery to the consignee.   There was a completed executory *contract* of sale in New York; but the completed *sale* was, or was to be, in this state.''

That case was taken to the supreme court of the United States on a writ of error (*United States v. Sanges*, 144 U. S. 322, 36 L. ed. 450, 12 Sup. Ct. Rep. 609), and the writ was dismissed by the supreme court upon the ground that no federal question was involved.

But to our minds, the decisive question to be determined in the case at bar is: had the property shipped from San Francisco ceased to be property in transit and become a part of the mass and bulk of the property of this state?   If it had, then it was subject to taxation under the revenue laws of this state.   In view of the facts as found by the trial court, it occurs to us that the property was no longer the subject of interstate transportation.   It had passed from the

hands of the carrier back to the hands of the owners, the Parks Bros. It was no longer in the "original package" in which it was shipped, but, on the contrary, those packages had been broken and separated, and the distribution was in process when the officer levied this tax assessment on the property.

It appears that the vendors would put up the whole order of one purchaser in a separate package, which might be small or large, and mark it with the name of the purchaser, and then when all the packages were done up that were to be sent to one shipping point, they would pack a large number of the smaller packages in one box or case for shipment. The question has arisen in this case as to which should be considered the "original package"—the smaller package intended and designed for the individual purchaser, or the entire box as the same was shipped from San Francisco to Ilo, Idaho. We think this question has been fully answered by the highest court in the land vested with jurisdiction to determine that question, and such determination has been adverse to the contention made by the appellants. A very interesting and instructive case on the subject is that of *May v. City of New Orleans,* 51 La. Ann. 1064, 25 South. 959. In stating the question under consideration in that case, Mr. Justice Blanchard said: "The question, then, which the case really presents is: what is the 'original package'? Is it the package in which the goods are put up for the convenience by the foreign manufacturer, or is it the case, the box, the covering in which the goods so put up by the manufacturer are packed for shipment? Is the manufacturer's package the original package, in the legal interpretation, or must that be held to be the original package which is delivered to the carrier for transportation to the desired destination? If the package put up by the manufacturer be the original package, then plaintiffs' objection to the assessment complained of is well taken. If the case or box in which the goods are placed for shipment be the original package, then their case falls." After reviewing and considering a number of authorities dealing with the subject of

"original packages," the learned justice says: "Other authorities of the same tenor might be cited, but these suffice to support the contention of the defendant that the 'original package,' in this case, must be held to be that in which the goods were shipped to and received by the plaintiffs, and not the smaller packages put up by the manufacturer, and packed within the case delivered to the carrier."

This case was taken on writ of error to the supreme court of the United States (*May v. City of New Orleans,* 178 U. S. 496, 44 L. ed. 1165, 20 Sup. Ct. Rep. 976), and after considering and approving the views announced by the Louisiana court, the supreme court said: "In our judgment, the 'original package' in the present case was the box or case in which the goods imported were shipped, and when the box or case was opened for the sale or delivery of the separate parcels contained in it, each parcel of the goods lost its distinctive character as an import and became property subject to taxation by the state as other like property situated within its limits. The tax here in question was not in any sense a tax on imports, nor a tax for the privilege of bringing the things imported into the state. It was not a tax on the plaintiffs' goods because they were imported from another country, but because at the time of the assessment they were in the market for sale in separate parcels, and therefore subject to be taxed as like property, in the same condition, that had its origin in this country."

It follows from what has been said in *May v. The City of New Orleans* and other cases to the same effect, that the original package in the case at bar consists of the box or case as it was shipped from California to Idaho. After that box or case was received by the owners at its destination, and opened and the smaller packages removed therefrom, it ceased to be an article of interstate commerce, and was subject to the taxing power of the state where found. The facts and circumstances of this case make it quite different from a case where the goods were shipped C. O. D. and were delivered by the carrier to the purchaser at the depot or

warehouse, and the purchase price then and there received by the carrier for and on behalf of the vendor.

Appellants have cited and relied on *Norfolk & Western Ry. Co. v. Sims,* 191 U. S. 441, 48 L. ed. 254, 24 Sup. Ct. Rep. 151. That was a case where Sears, Roebuck & Co., of Chicago, had sold a sewing-machine to a purchaser in North Carolina on written mail order from the purchaser. The machine was shipped from Chicago C. O. D., and upon the receipt thereof at its destination in North Carolina, the purchaser paid the purchase price to the agent, and before the purchaser had received the machine, the sheriff notified the agent that the vendors would have to pay a license before delivering the machine, and on their refusal to do so, he seized the property. The supreme court of North Carolina sustained the action of the sheriff and held that the license tax was properly collectible. (*Broom v. Broom,* 130 N. C. 561, 41 S. E. 673.) On writ of error to the supreme court of the United States, the judgment of the supreme court of North Carolina was reversed, the court holding that the action of the North Carolina authorities amounted to levying a tax on interstate commerce. This latter decision seems to have rested on the principle announced in the case of *Leisy v. Hardin,* 135 U. S. 100, 34 L. ed. 128, 10 Sup. Ct. Rep. 681, wherein the court said: "It is only after the importation is complete and the property imported is mingled with and becomes a part of the general property of the state by the importer that the state regulations can act upon it."

In *Re Kinyon,* 9 Idaho, 642, 75 Pac. 268, this court had under consideration the question of the taxing power of the state where it affects interstate commerce, and reviewed most of the authorities cited in the case at bar. In that case this court said: "It should be observed, however, that a distinction has been made where the goods or property at the time of the sale are within the state and under the control and care of the agent or solicitor. In such cases, it is said that both the property and the business or occupation are within the jurisdiction of the state, and therefore subject to its regulation and control, and that any transaction with reference

thereto does not look to interstate commerce for the carrying out and execution of the same."

In support of that statement, we cited the case of *Emert v. State of Missouri*, 156 U. S. 296, 39 L. ed. 430, 15 Sup. Ct. Rep. 367.

We conclude in the case under consideration that the property had ceased to be the subject of interstate commerce, and was no longer in the "original packages," but had become a part and parcel of the general body of the property of this state, and was subject to the taxing power thereof, and that the tax was properly assessed thereon.

The judgment of the trial court is affirmed, with costs in favor of respondent.

Sullivan, J., concurs.