The judgment appealed from is affirmed, at appellant's cost.

### On Motion To Amend Decree.

PER CURIAM. On the joint motion of counsel for both plaintiff and defendant herein, and upon their suggesting that James C. Davis has succeeded Walker D. Hines as Director General of Railroads and Federal Agent under the Transportation Act (41 Stat. 456).

It is ordered that James C. Davis, Director General of Railroads and Federal Agent under the Transportation Act, be substituted as the party defendant herein; and the judgment herein rendered and affirmed is now therefore rendered against James C. Davis in his aforesaid official capacity.

---

(88 South. 397)

No. 24013.

## KRAUSS BROS. LUMBER CO. v. BOARD OF ASSESSORS et al.

(April 4, 1921. Rehearing Denied May 2, 1921.)

*(Syllabus by Editorial Staff.)*

1. **Taxation** &marcap;74—**Limitation of taxation on bills receivable to those arising within the state applies only to nonresident taxpayers.**

Within Revenue Law 1898, § 7, providing for assessment of mercantile firms, and stating that it shall apply to persons representing in the state business domiciled elsewhere, and that bills receivable arising from business done within the state are assessable within the state, the last clause, limiting assessment of bills receivable to those arising within the state, ap-

148 LA.—34

plies only in the case of business domiciled elsewhere, and the statute authorizes the assessment against a domestic corporation of bills receivable resulting from transactions outside of the state.

2. **Commerce** &marcap;72—**Whether tax depends on volume of business determines whether it directly burdens interstate commerce.**

Whether the amount of the tax levied by the state varies in proportion to the volume of interstate business transacted is the test determining whether the tax is a direct burden upon interstate commerce, which the state is without authority to levy under the commerce clause of the United States Constitution.

3. **Commerce** &marcap;72—**Tax on bills receivable representing gross profits from interstate sales does not burden interstate commerce.**

Ad valorem tax levied upon the bills receivable of a domestic corporation engaged in interstate commerce, which represent the gross proceeds of the business of the corporation, is a tax upon property acquired by interstate commerce, not upon the commerce itself, and therefore does not violate the commerce clause of the federal Constitution.

4. **Commerce** &marcap;77—**Tax on bills receivable representing sale of imports is not "levy of impost or duty on imports or exports."**

An ad valorem tax levied by a state upon bills receivable resulting from sales within the state of goods imported from a foreign country is not the "levy of impost or duty on imports or exports," within Const. U. S. art. 1, § 10, par. 2.

5. **Commerce** &marcap;77—**Goods shipped in from another state are not "imports."**

Goods brought into the state from another state of the United States are not "imports," within Const. U. S. art. 1, § 10, par. 2, forbidding the states to lay any impost or duty on imports or exports.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Import—Importation.]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by the Krauss Bros. Lumber Company against the Board of Assessors for the Parish of Orleans and the Board of State Affairs to annul an assessment for taxation. From a judgment rejecting the demand and

declaring the assessment valid, plaintiff appeals. Affirmed.

Eldon S. Lazarus and Wm. W. Westerfield, both of New Orleans (Herbert S. Weil and Zunts, Cooper & Westerfield, all of New Orleans, of counsel), for appellant.

Harry P. Sneed, of New Orleans, for appellee Board of State Affairs and State Tax Collector.

George H. Terriberry, of New Orleans, for appellee Board of Assessors.

Ivy G. Kittredge, City Atty., of New Orleans, for appellee City of New Orleans.

O'NIELL, J. This is an action to annul an assessment for ad valorem taxes levied upon credits and bills receivable. The suit is against the board of assessors for the parish of Orleans and the board of state affairs. From a judgment rejecting the demand and declaring the assessment valid, plaintiff has appealed.

Appellant is a domestic corporation having its domicile and main office in the city of New Orleans. The company is engaged in the business of buying and selling lumber in large quantities. The annual purchases and sales amount to about $3,500,000. The company does not have a stock of lumber on hand in Louisiana or elsewhere. No purchases or sales are made in less than carload lots. The lumber bought is applied to contracts of sale already made or is sold by reconsignment of the cars in transit. The lumber is all bought direct from the mills or manufacturers. Only a comparatively small part of the lumber is bought or sold in Louisiana. It is bought mainly from mills or manufacturers in Texas, Arkansas, Alabama, Mississippi, Florida and Georgia, and is shipped to other states. In the year for which the assessment was made, the amount of credits and bills receivable due the company for business thus transacted in other states, being therefore interstate business, amounted to $345,855.

The credits and bills receivable due for business done in Louisiana, the intrastate business, amounted to $7,930. The amount of debts and bills payable due by the company in Louisiana amounted to $99,860.40, and the amount of debts and bills payable due by the company in other states amounted to $96,635.37. The board of assessors and the board of state affairs assessed the company's credits and bills receivable at $157,000. This valuation was made by subtracting the total amount of debts and bills payable, $196,495.77, from the total amount of credits and bills receivable, $353,785, and by giving the company credit, arbitrarily, for the $289.23, merely to reduce the valuation to even thousands of dollars.

Plaintiff contends that the credits and bills receivable that resulted from its interstate business are not subject to taxation by the state. As the amount of debts and bills payable in Louisiana amount to far more than the credits and bills receivable resulting from the business done in Louisiana, it follows that, if the credits and bills receivable resulting from the interstate business are not subject to taxation by the state, the entire assessment must be annulled. It must be and is conceded that the interstate business, from which the major part of the credits and bills receivable arose, has no local or intrastate aspect whatever. In other words, there is no dispute that the credits and bills receivable assessed for state and municipal taxes represent a part of the gross prices or proceeds of sales made in interstate commerce.

The only question presented, therefore, is whether credits and bills receivable representing the prices or proceeds of sales made in interstate commerce are subject to the ad valorem taxes levied by the state, generally, upon all credits and bills receivable having their situs within the state.

Plaintiff contended, primarily, that the language of the statute levying the tax was not

susceptible of the interpretation that it included credits or bills receivable arising from business done outside of Louisiana, and contended finally that such an interpretation would violate the commerce clause of the federal Constitution, reserving to the Congress of the United States exclusive authority to regulate interstate commerce.

The contention with regard to the language of the statute, though made in plaintiff's petition, has not been referred to in the oral arguments or in the printed briefs filed by counsel for appellant. It has reference to an expression in section 7 of the Revenue Law (Act 170 of 1898), a part of which is quoted in plaintiff's petition thus: "All bills receivable, obligations or credits arising from the business done in this state are hereby declared assessable within this state."

[1] The quotation is only a part of a sentence in the statute, the context of which shows plainly that it refers only to bills receivable, obligations or credits belonging to nonresidents, and not to bills receivable, obligations or credits belonging to residents of the state, or corporations or associations having their domicile in the state. The statute declares that, in assessing mercantile firms, the assessor shall place such valuation upon the stock in trade, all cash, whether borrowed or not, money at interest, open accounts, credits, etc., as will represent in their aggregate a fair average on the capital, both cash and credit, employed in the business of the party or parties assessed. Then follows immediately the explanatory sentence, showing that the intention is to include credits and bills receivable belonging to nonresidents as well as residents of the state, viz.:

"And this shall apply with equal force to any person or persons representing in this state business interests that may claim domicile elsewhere, the intent and purpose being that no nonresident, either by himself or through any agent shall transact business here without paying to the state a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits arising from the business done in this state are hereby declared assessable within this state, and at the business domicile of said nonresident, his agent or representative."

It is plain, therefore, that the limitation upon the right to assess credits and bills receivable, to those arising from business done in the state, applies only to credits and bills receivable belonging to nonresidents. The statute plainly levies the tax upon all credits and bills receivable due to residents of the state or to corporations or associations domiciled in the state, whether such credits arise from business done within or outside of the state.

The only remaining question is whether the credits and bills receivable belonging to the corporation domiciled in this state, and having been acquired as the gross price or proceeds of sales made in interstate commerce, can be subjected to taxation by the state without violating the commerce clause of the federal Constitution, reserving to the Congress of the United States exclusive authority to regulate interstate commerce.

Appellant relies upon the decision of this court in Gelpi & Bro. v. Schenck, Treasurer, 48 La. Ann. 1535, 21 South. 115, declaring that credits and bills receivable arising from sales made in this state of goods imported from foreign countries are not subject to taxation by the state. Appellant relies also upon the decisions of the United States Supreme Court maintaining the general doctrine that a state tax which, in effect, regulates or interferes with interstate commerce is a violation of the commerce clause of the Constitution of the United States, no matter what name the tax may bear or what was the purpose of its being imposed. In support of the doctrine last stated, appellant relies particularly upon the rulings in Western Union Telegraph Co. v. Kansas, 216 U. S. 1,

30 Sup. Ct. 190, 54 L. Ed. 355; Looney v. Crane, 245 U. S. 178, 38 Sup. Ct. 85, 62 L. Ed. 230; Crew-Levick v. Pennsylvania, 245 U. S. 292, 38 Sup. Ct. 126, 62 L. Ed. 295; International Paper Co. v. Massachusetts, 246 U. S. 135, 38 Sup. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617; and United States Glue Co. v. Town of Oak Creek, 247 U. S. 321, 38 Sup. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748.

[2] All of the decisions by the United States Supreme Court cited above were reviewed and analyzed in the opinion rendered by this court in State v. Albert Mackie Co., 144 La. 339, 80 South. 582, where it was held that a license tax imposed upon a local business and graduated according to the amount of the gross sales could not be sustained as to sales made in interstate commerce. An examination of the decisions referred to, however, discloses that, in every case in which the state tax was declared violative of the commerce clause, it was graduated and dependent upon the volume of interstate business done. In fact, the question whether the amount of the tax varies in proportion to the volume of interstate business seems to be the only test as to whether the tax is a direct burden upon interstate commerce. A state tax that is not a direct burden upon interstate commerce does not conflict with the commerce clause of the Constitution of the United States. To illustrate: A state tax upon net profits resulting from interstate commerce, being in reality a tax upon the property of the proprietor of the business, is not a direct burden upon the interstate commerce. Of course, a state license tax graduated according to gross sales in interstate commerce and varying according to the volume of business done is a direct burden upon the interstate commerce. But the fact that property belongs to a corporation engaged in interstate commerce does not deprive the state in which the property is situated of the right to impose an ad valorem tax upon the property, provided the tax be not regulated or graduated according to the volume of interstate business done; and it makes no difference, in that respect, whether the corporation owning the property be a domestic or a foreign corporation. The distinction between a direct or immediate burden and an indirect or incidental burden upon interstate commerce is drawn clearly in the case of United States Glue Co. v. Town of Oak Creek, supra, viz.:

"The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the states are not exempted by the federal Constitution because they happen to be engaged in commerce among the states."

[3] The reason why a license tax graduated according to net income from interstate commerce is not a direct burden upon the business is that the amount of the tax does not vary in proportion to the amount of the business done. For the same reason, an ad valorem tax levied upon property acquired as a result of a transaction in interstate commerce, or levied upon the gross proceeds

of sales made in interstate commerce, is not a direct or an immediate burden upon interstate commerce. None of the decisions by the United States Supreme Court cited by counsel for appellant maintains that property which has been acquired as the result of transactions in interstate commerce is for that reason exempt from state taxation. Credits or bills receivable representing the price or proceeds of sales made in interstate commerce are as completely the property of the party who so acquired them, and are as free from the interstate transaction, as if they were tangible property acquired in exchange in an interstate transaction, or as if they were acquired from some other source. In that respect, no distinction can be made between tangible and intangible property acquired by interstate commerce.

[4, 5] The ruling in Gelpi & Bro. v. Schenck, Treasurer, 48 La. Ann. 1535, 21 South. 115, was that credits and bills receivable due for sales made in this state of goods imported from a foreign country could not be subjected to an ad valorem tax levied by the state, without violating the provision in the second paragraph of section 10 of article 1 of the Constitution of the United States, forbidding the states to lay any impost or duty on imports or exports, except what may be absolutely necessary for executing their inspection laws. So far as the decision is pertinent to the question now presented, our opinion is that it is not well founded. It is conceded in the opinion of the court that imported goods lose their immunity from state taxation as soon as they are disposed of by the importer, or as soon as the original packages are broken and the goods are thereby confused with the mass of property in the state. If the immunity from state taxation is lost by the mere breaking of the packages containing imported goods, surely it cannot attach to the price or proceeds of the goods when sold. The decision in Gelpi & Bro. v. Schenck, however, is founded upon only one decision by the Supreme Court of the United States, the decision in Cook v. Commonwealth of Pennsylvania, 97 U. S. 566, 575, 24 L. Ed. 1015; which decision was not at all appropriate, because the state tax there declared invalid was a license tax of a fixed percentage upon the gross amount of sales by an auctioneer of imported goods sold in their original packages. The decision in Gelpi & Bro. v. Schenck, Treasurer, is not sustained by authority or reason and is altogether inconsistent with the later decision in May & Co. v. City of New Orleans, 51 La. Ann. 1064, 25 South. 959; Id., 178 U. S. 496, 20 Sup. Ct. 976, 44 L. Ed. 1165. It is true, the decision in Gelpi & Bro. v. Schenck, Treasurer, was cited with approval in Henderson, Tax Collector, v. Ortte, 114 La. 523, 38 South. 440. But the latter decision is also not well founded. The tax declared invalid was a license tax imposed upon peddlers. The defendant was engaged in peddling and selling sewing machines, each in the original crate in which it was bought and shipped from Illinois. The ruling was that the license tax could not be imposed without violating the second paragraph of section 10 of article 1 of the Constitution of the United States, forbidding the states to lay any impost or duty on imports or exports, except what may be absolutely necessary for executing their inspection laws. Of course, the prohibition against a state's laying any impost or duty on imports or exports has nothing to do with goods shipped from one to another of the United States. The court laid great stress upon the fact that each sewing machine was sold in the crate in which it was shipped from Illinois and was therefore sold in its "original package." The doctrine that imported goods lose their immunity from state taxation when the original packages are broken and the goods are thereby confused with the mass of property within the state has nothing whatever to do with goods shipped from one to an-

148 LOUISIANA REPORTS

other of the United States. The importance attached to the fact that each sewing machine was sold in the original crate in which it was shipped from Illinois was also altogether inconsistent with the doctrine affirmed by the Supreme Court of the United States in May & Co. v. City of New Orleans, supra, where it was said:

"In this view, if a jeweler desires to buy 50 Geneva watches for the purpose of selling them here without paying taxes upon them as property, he need only direct them to be placed in separate cases, however small, and then put them all together in one box. After paying the import duties on all the watches in the box and receiving the box at his store, he may open the box, and the watches, each one being in its own separate case, may then be exposed for sale. According to the contention of the plaintiffs, each watch, in its own separate case, would be an original package, and could not be regarded as part of the mass of property of the state and subject to local taxation, so long as it remained in that form and unsold in the hands of the importer."

The court then denied the correctness of the proposition. The decision in Henderson, Tax Collector, v. Ortte, is therefore not well founded, is not consistent with the jurisprudence of the United States Supreme Court or of this court, and must be overruled.

The judgment appealed from is affirmed, at appellant's cost.