(No. 5474. March 25, 1930.)

PRESTON A. BLAIR COMPANY, a Corporation, Respondent, v. J. D. JENSEN, as Sheriff of Bingham County, Idaho, DOROTHY DAHLSTROM, as Treasurer and Ex-Officio Tax Collector of Bingham County, Idaho, and BINGHAM COUNTY, IDAHO, a Municipal Corporation of the State of Idaho, Appellants.

[286 Pac. 366.]

W. D. Gillis, Attorney General, Leon M. Fisk, Assistant Attorney General, and Z. Reed Millar, Prosecuting Attorney, for Appellants.

Ralph L. Albaugh, for Respondent.

Verner R. Clements and M. H. Greene, *Amici Curiae.*

BRINCK, District Judge.—Plaintiff is a dealer in automobiles at Blackfoot and brought this action to enjoin the collection of general *ad valorem* taxes assessed for the year 1928 on three new automobiles which had been shipped to him at Blackfoot from Detroit in September, 1928. A demurrer to the complaint was overruled, the defendants refused to plead further, and a decree was thereupon entered by the district court granting the injunction as prayed, from which decree the defendants have appealed.

It is alleged in the complaint that the automobiles were, at all times while in the plaintiff's possession, duly registered and licensed in conformity with the provisions of Sess. Laws 1927, chap. 244, secs. 17, 28. These sections do not provide for a registration of automobiles, but of dealers; but we assume from the allegations and briefs that the plaintiff had paid his dealer's license and purchased sufficient additional number of plates to provide for each of the automobiles involved.

The only question argued by counsel was as to whether automobiles in the hands of a dealer who is licensed as such and who has obtained number plates for each car

involved are subject to general *ad valorem* taxation, or whether they are exempted from such taxation under the terms of sec. 26 of the Motor Vehicle Registration Act. (Sess. Laws 1927, chap. 244.)

The act in question follows quite closely the Uniform Motor Vehicle Registration Act which was recommended by the National Conference of Commissioners on Uniform State Laws in 1926 (Handbook of National Conference of Commissioners on Uniform State Laws, 1926, pp. 469–490). It is not, however, a *verbatim* copy of the recommended act, and does not follow the section numbers of the recommended act, which has led to some clerical inaccuracies in the law as enacted. Thus, in sec. 17 (b), reference is made to sec. 14 as is made in the recommended act, but referring no doubt to what is sec. 13 in the law as adopted.

Chapter 244 provides (sec. 7) that every owner of a motor vehicle shall, before the same is operated upon any highway, obtain registration thereof, excepting when an owner is permitted to operate a vehicle under the special provisions relating to dealers and others; sec. 9 provides for an application for such registration, which shall give detailed information identifying and describing the particular vehicle to be registered; sec. 11 provides for the issuance of a registration card which identifies both the owner and the vehicle; sec. 13 provides that number plates shall be issued to every owner whose vehicle is registered; sec. 17 provides that a dealer, in lieu of registering each vehicle, may, upon the payment of the fees required by law, obtain plates which may be transferred from one to another of the vehicles operated by him, and that he shall not cause or permit any vehicle owned by him to be operated upon a highway (except under circumstances not here involved) without having displayed upon its number plates issued under this section or under sec. 13 (sec. 14) ; sec. 25 provides that fees for the registration of motor vehicles shall be as provided in C. S., sec. 1592, as amended by Sess. Laws 1925, chap. 177, which provides in detail the fees to be paid for licensing various classes of motor vehicles, and

does not purport to include dealers' licenses; sec. 28 provides that a manufacturer or dealer shall pay a fee of $60, and that additional number plates, not exceeding six sets, shall be issued to him upon payment of $3 for each additional set.

 Section 26 of the act, under which plaintiff claims his exemption in this case, provides:

"The registration fees imposed by this chapter upon motor vehicles shall be in lieu of all taxes thereon, general or local, and any such motor vehicle properly registered and for which the required fee has been paid, shall be exempt from taxation."

This provision seems so clear and unambiguous as to require and permit of no construction varying from the plain meaning of the words used. It does not provide that the registration or license fee of dealers shall give them any exemption from general taxation, but only that motor vehicles which have been registered and the fee paid, shall be exempt. The vehicles in plaintiff's hands are not themselves registered, and no registration is imposed by the act upon such vehicles up to the number for which the dealer obtains additional plates at $3 per set. He is granted this privilege of obtaining a limited number of additional sets in lieu of registering individual automobiles; or he might, at his option, instead of obtaining additional sets, register his individual cars and pay the regular registration fee therefor. Throughout the act, as appears from the provisions above mentioned, there is a clear distinction made and maintained between vehicles which are registered and those which may be owned and operated without registration thereof. Thus, sec. 7 provides that a motor vehicle shall not be operated unless registered, except when operated under special provisions such as those relating to dealers. Section 13 provides for number plates to be issued to the owner of a registered vehicle; and sec. 17 provides for the issuance of number plates to a dealer, although his vehicles are not registered, and that he shall not operate his vehicles without displaying thereon plates

obtained by registration under sec. 13 (14), or obtained by virtue of his dealer's license and fees under sec. 17.

We think the legislature could not have made more specific than they have done their intention to limit the exemption from taxation to motor vehicles which are themselves registered.

■ Respondent's principal argument is based upon the fact that C. S., sec. 1602, which was repealed by the 1927 act, provided as follows: "The registration fees imposed by this chapter upon motor vehicles other than the registration fees required of dealers and manufacturers, shall be in lieu of all taxes thereon, general or local, and any such motor vehicle properly registered and for which the required fee has been paid, shall be exempt from taxation"; and that the legislature, in enacting sec. 26 of the 1927 act, used the same language, except that they omitted the words, "other than the registration fees required of dealers and manu- facturers." Various rules of construction of statutes which are amendatory of previous statutes, or which are enacted in lieu of repealed statutes, are discussed by respondent and by counsel appearing as *amici curiae;* but none of them are applicable here, for the reason that there is no ambiguity in the present statute or occasion for construction of it. Where a statute is clear on its face, and when standing alone is fairly susceptible of but one construction, as is chap. 244 in this respect, the courts will adopt that construc- tion, and refuse to consider prior statutes on the same sub- ject. (25 R. C. L., p. 1063; *Barnes v. Philadelphia etc. R. Co.,* 17 Wall. (U. S.) 294, 21 L. ed. 544.) Prior statutes may be resorted to to solve but not to create an ambiguity. (*Hamilton v. Rathbone,* 175 U. S. 414, 40 Sup. Ct. 155, 44 L. ed. 219.) In the adoption of the new Motor Vehicle Registration Act the words referred to were no doubt omitted because deemed superfluous, since the exemption, even in the absence of these words, does not purport to affect automobiles which are not themselves registered.

■■ All of counsel appearing in the case, as well as *amici curiae,* assumed that unless exempted by this statute,

the property was liable to assessment for general taxation for the year 1928, although it was not received from without the state until September of that year; and upon resubmission of the case to counsel for presenting this question, all, except possibly respondent's attorney, still maintain this position. We think, however, there is no authority in our statutes for such position. C. S., sec. 3097, as amended, Sess. Laws 1927, chap. 263, p. 562, provides that all property subject to assessment must be assessed at its full cash value with reference to its value on the second Monday in January of the year in which the taxes are levied, and that the lien for taxes shall attach to the property assessed and to other property as of that date. The actual assessment, of course, is in general made at a later time, but it must relate to the status of the property on that date.

If property coming into the state after the second Monday in January is to be assessed as of its value on that date, it would be necessary to inquire whether it was in existence on that date, since if not then in existence, it could have had no value at that time, and no value could be assigned to it as of that date. It is probable the automobiles in question were not in existence on the second Monday of January in 1928. There could be no rational basis for assessing property brought into Idaho in September, for instance, only if it had a taxable situs in another state in January, and failing to assess other property brought into the state at the same time but nonexistent in January.

We have no other statute fixing a definite date as of which assessments are to be made. In most states, the annual assessment is made as of some fixed day, and where the statute is not explicit, the courts usually construe it as meaning that the assessment is to be made as of a particular date. (Note, 38 L. R. A., N. S., 856; 2 Cooley on Taxation, 4th ed., p. 1203, sec. 546; 27 Am. & Eng. Ency. of Law, 2d ed., p. 662.) Where the statute provided that property should be assessed as of its value on April 1st, it was held that the further provision for its assessment up to June did not per-

mit assessment of property not in existence in the state on April 1st. (*Gaar, Scott & Co. v. Sorum,* 11 N. D. 164, 90 N. W. 799.)

We have no thought, nor have we before heard it suggested, that the legislature had intended by the present statute to provide for taxation of property generally for any year, which may have come into the state after the second Monday in January of such year. Special provision is made as to migratory livestock, which probably is intended to and does require the assessment of such property coming into the state at any time during the year, but such property is to be taxed only on the proportion of its value that the time such property is within the state bears to the whole year. (C. S., sec. 3285.)

If the law requires that plaintiff here, or dealer in any other merchandise, must pay taxes upon property coming into the state in September, it inevitably follows that merchants of all kinds must pay taxes upon their inventory value at the beginning of the year, plus the value of all invoices received during the year. Under such a construction, the tax would, in its practical result, amount to a sales tax; and we do not understand that the legislature has yet adopted a revenue measure of that nature.

The statutes upon which counsel base their assumption that property arriving in the state after the second Monday in January is subject to property taxes for that year are the provisions of C. S., sec. 3266, as amended by Sess. Laws 1927, chap. 263, p. 564, providing for the filing of a personal property assessment-roll, covering property assessed prior to the fourth Monday in June, and the filing of a subsequent assessment-roll covering property which has been omitted and which has come into the county between the fourth Monday of June and the fourth Monday of November. We think, however, that this provision is applicable only to property which is otherwise subject to assessment, and which was in existence and within some other county of the state on the second Monday of January of the particular year. A further amendment of the statute

(Sess. Laws 1929, p. 587), while not in force at the time this case arose, sheds some light upon the intention of the legislature in this respect, requiring, as it does, the entry upon such subsequent assessment-roll of property which has come into the county between the second Monday in July and the fourth Monday in November, unless it be exempt from taxation "on the second Monday of January of the same year." A further indication of the intent of the legislature is found in C. S., sec. 3284-I (Sess. Laws 1927, chap. 263, p. 569), providing that where anyone owning personal property, except migratory livestock, on the second Monday of January of any year, taxes on which are not secured by lien on other property, shall desire to remove the same from the county or sell it before the payment of the current year's tax, the tax shall be paid within a specific time. There would be no reason for limiting such provision to property owned on the second Monday in January, if property later acquired during the year were taxable. We think, therefore, the language of the statutes is not susceptible of the construction placed upon it by counsel; and we cannot ascribe to the legislature the intent, unless clearly expressed, to tax property for the full year which may be within the state only from and after the fourth Monday in November, nor to assess against dealers in commodities a tax on their inventories at the beginning of the year, and also upon all their invoices received during the year.

Our attention has been called to the case of *Parks Bros. & Co. v. Nez Perce County*, 13 Ida. 298, 121 Am. St. 261, 89 Pac. 949, holding that certain goods sent into the state during the year to fill orders taken by agents were taxable. The question there decided was whether the property was the subject of interstate commerce, so as not to be subject to our revenue laws; but the statute there involved provided expressly that property not within the state on the second Monday in January should be assessed where it was situated when assessed, thereby expressly providing for the assessment of property not within the state on the tax day.

(Sess. Laws 1901, p. 238, sec. 11; embodied in R. C., sec. 1653.)

We think a dealer's stock of goods must be assessed as of the second Monday in January, and that our statutes do not provide for taxation of goods received thereafter during the year, in addition to the inventory values on the tax day. The demurrer was therefore properly overruled and the judgment of the trial court is affirmed. Costs to respondent.

Givens, C. J., and Budge, Lee and Varian, JJ., concur.