(No. 5674. December 11, 1930.)

WINTON LUMBER COMPANY, a Corporation, Appellant, v. SHOSHONE COUNTY, a Municipal Corporation, W. H. HERRICK, Assessor, and WALTER HENDRICKSON, Sheriff, Respondents.

[294 Pac. 529.]

Robert H. Elder and E. R. Whitla, for Appellant.

Charles E. Horning and James A. Wayne, for Respondents.

McNAUGHTON, J.—On the second Monday of January, 1929, the Winton Lumber Company had no logs in Shoshone County. On the second Monday of January, 1930, it had in the county approximately 4,000,000 feet of its 1929 cut from government timber. The lumber company admits the right of Shoshone County to collect taxes on these logs, and it was testified that they had been or would be turned in to the assessor, The consolidated actions here on appeal in-

volve an assessment on logs of the 1929 cut for the year 1929, and on the 1930 cut for the year 1930.

The case here is an appeal from a judgment upon an application for the cancelation of $96,500.00 of an assessment made against lands of the Winton Lumber Company for personal property tax on logs from government timber, cut during the spring and summer of the year 1929; and an appeal from a judgment in an action to enjoin the assessment of similar taxes levied for the year 1930. The cases were consolidated for trial and will be so treated on the appeal.

There is no dispute in the testimony. The first and main case is as follows: In the early fall of 1928, the Winton Lumber Company consulted the government Forestry Service at Coeur d'Alene, making application to the Forestry Department to put a parcel of standing timber on the market. Pursuant thereto the government opened a sale area of about 1131 acres on what is known as the Haystack Creek watershed. This timber was advertised for sale but no bids were received and it was then decided to offer the timber at private sale. Pursuant to negotiations with the Winton Lumber Company in this behalf, a timber sales agreement, which is in evidence as Plaintiff's Exhibit "A," was drafted at the Coeur d'Alene office of the Forestry Service, and forwarded to the Missoula office as a "sample" for approval. It was approved as a sample agreement by the Missoula office and returned to Coeur d'Alene. Thereupon a request was made of the lumber company for an advancement of $8,000 on the proposed sale in the letter of transmittal inclosing to the company the form of agreement. The form of agreement was held by the lumber company, but its check for $8,000 was sent on September 20, 1928, to the Forestry Service. This check was held, but not accepted or deposited, pending the negotiations. On the 18th of February, 1929, the timber sale agreement was executed by the lumber company and forwarded to the Forestry Department. It was testified that on February 21, 1929, there was received by the fiscal agent $8,000, which was the first payment. On May

10, 1929, the agreement was approved by the Forestry Department.

After receipt of the sample agreement in the fall of 1928, the lumber company spent considerable money upon the sale area in anticipation of this sale, preparatory for logging, but cut no merchantable timber. In March, 1929, after executing the agreement and the acceptance of the advance payment, and the giving and acceptance of a bond, the lumber company began cutting logs from the "sale area," from trees which had been marked for cutting by the Forestry Service the fall before. The company was called upon and under the contract for a further advance payment of $15,000 shortly after it started logging operations, and was called upon for like advance payments as the logging progressed, so that up to about May 1, 1929, some $38,000 had been advanced by the lumber company.

Regarding the logs cut in 1930, the situation is pretty much the same except the advancements and bond, pursuant to which the cut was made, were much smaller, and the agreement is the same except as to timber and amounts, and was executed on March 4, 1930.

In the first case the assessor of Shoshone County entered an assessment for taxes against lands in the county owned by the Winton Lumber Company of $96,500, on account of taxes on 15,500,000 feet, b. m., of sawlogs. The company petitioned the county commissioners of Shoshone County, sitting as a board of equalization, for an order reducing the assessment against it in the total amount claimed for said logs, as illegal. The commissioners denied the petition, and plaintiff appealed to the district court. In the second case, action was brought by plaintiff in the district court, asking that the assessor be enjoined from assessing the 1930 cut for the year 1930. The injunction action was consolidated for trial with the appeal from the order of the commissioners.

Upon trial in the district court, the court found the Winton Lumber Company was the owner (equitable owner) on the second Monday of January, 1929, of the standing timber

from which the logs were cut, which timber had been marked for sale in the fall of the preceding year, and which was covered by the agreement in evidence, dated February 18, 1929, and was on the second Monday in January, 1930, likewise the owner of the other standing timber covered by the agreement dated March 4, 1930.

In appellant's assignments of error these findings and the affirmance of the assessments are challenged on several grounds. We shall not discuss the discrepancies pointed out by appellant between the assessment on logs as personal property, made by the assessor, and its justification by the court as real property in standing timber. Generally errors by taxing officers do not discharge valid taxes. The substance of these consolidated cases is whether any tax was validly chargeable against the lumber company on logs of the character involved in either year. This fundamental question being exhaustively briefed, we shall go directly to it.

In this state property is assessable for taxes as of the second Monday of January. (C. S., sec. 3097, as amended by Sess. Laws 1927, chap. 263, p. 562; *Preston A. Blair Co. v. Jensen*, 49 Ida. 118, 286 Pac. 366.) That is, the status and value of property on that date controls the assessment for taxation. (*Preston A. Blair Co. v. Jensen, supra; Clearwater Timber Co. v. Nez Perce County*, 155 Fed. 633.)

It is a matter of common knowledge that timber lands in this state are primarily and chiefly valuable for the timber growing upon them. Consequently, though standing timber is considered and treated as real property, the law recognizes that the ownership of the land may be in one party and the ownership of the standing timber may be in another, and provides the land and timber may be assessed separately. (C. S., sec. 3101, as amended, Sess. Laws 1925, p. 108.)

However, neither the land nor its crop of timber may be assessed more than once during the tax year. To assess the standing timber as real property, and, after severance, in the same year to again assess it as sawlogs, we think

would be in violation of the constitutional provision against duplicate taxation. (Sec. 5, art. 7, Const.)

It is also held that standing timber which is exempt from taxation on the second Monday of January remains exempt through the tax year. (*Clearwater Timber Co. v. Nez Perce County, supra; Dodge v. Nevada Nat. Bank,* 109 Fed. 726.) .

But it is claimed in this case by respondents that the lumber company was the owner, at least the equitable owner, of this standing timber, which was cut into these logs, on the second Monday of January of the year for which they were assessed. This claim is based upon the dealings between the lumber company and the government, and the agreements in evidence.

In support of this claim and the finding of the trial court, respondents cite *Bothwell v. Bingham County,* 24 Ida. 125, 132 Pac. 972, and *Cheney v. Minidoka County,* 26 Ida. 471, 144 Pac. 343. We do not think the evidence in this case discloses a foundation for the application of the doctrine of those cases. The doctrine of those cases is that lands of entrymen, under either the homestead laws or the Carey Act, which have been proved up and completely earned, and for which final certificate has issued, are subject to taxation notwithstanding patent had not issued. The basis for invoking the doctrine of these cases is clearly stated by this court in *Leney v. Twin Falls County,* 40 Ida. 600, 236 Pac. 532, wherein the court said:

"This court and many others, including the supreme court of the United States, have determined that when an entryman upon public lands has done all that was required of him by the federal laws and the rules and regulations of the Department of the Interior to earn title, and a final certificate has been issued to him by the Secretary of the Interior, or, in other words, when the proceedings for the acquisition of the title have reached the point where nothing more remains to be done by the entryman, and the government no longer has any beneficial interest in the land and does not exclude the entryman from the use of it, he is regarded as the beneficial owner and the land as subject to taxation,

even though the duty of passing the legal title to him has not been discharged. But those same cases and many others are authority for the converse of that rule, that so long as something remains to be done to divest the government of its beneficial interest, the equitable title does not pass. (*Bothwell v. Bingham County, supra; Northern Pac. Ry. Co. v. Myers,* 172 U. S. 589, 19 Sup. Ct. 276, 43 L. ed. 564. See, also, *Irwin v. Wright,* 258 U. S. 219, 42 Sup. Ct. 293, 66 L. ed. 573, where many of the decisions are collated.)''

In determining whether the government's title to the standing timber involved in these cases had been divested on the second Monday of January, we shall first examine the agreements in evidence. They are unilateral, by the lumber company to the government. In them the government makes no grant, no promise. But the lumber company agrees to purchase from the area, in strict conformity with all the requirements therein set forth, all the dead timber standing or down, and all the live timber marked or designated for cutting which is merchantable for sawlogs, estimated in the first contract at 16,900,000 feet, b. m., of white pine 50,000 feet, b. m., of yellow pine, and 1,000,000 feet of spruce. The company agrees to pay $4.00 per thousand for the white pine, $2.50 per thousand for the yellow pine, and $1.50 per thousand for the mixed. The company agrees that payments shall be made in advance instalments of not less than $8,000 and not more than $20,000. The company agrees that unless extension of time shall be granted, all timber shall be cut and removed and the requirements of the agreement satisfied before December 31, 1930. The agreement further stipulates: ''The title to all timber included in this agreement shall remain in the United States until it has been paid for, scaled, measured or counted.''

It seems clear the agreement in evidence did not, on or before the second Monday in January, 1929, or at all, vest any title in the lumber company to any standing timber. None had been paid for or scaled. Nor do we think the lumber company had acquired on that date any equitable title to any standing timber on government land. It had

sent its check to the Forestry Department for $8,000, at the department's request, contained in the letter of transmittal bringing to the company the blank agreement approved as to form. This check was not cashed until after the agreement was executed by the lumber company. True, the lumber company, in anticipation of making the purchase after receiving the sample agreement submitted, went upon the sale area and expended large sums of money in preparation for logging. It was upon this fact, coupled with a sufferance of the same by the government, that the trial court no doubt concluded the case came within the doctrine of the entryman cases hereinbefore referred to. But the record will not sustain this reasoning because the company clearly went upon this area at its own risk; it earned no rights by going upon the area before the agreement was executed and before any payment was accepted, nor was the government divested of any right or title by sufferance of said unauthorized act.

Indeed, instead of the company having complied with all conditions requisite to vesting title in this timber in it and divesting the government thereof, it in reality had complied with none of them on or prior to the second Monday of January of the year in which the logs were assessed. This being so, it follows the logs assessed in 1929 were, as standing timber, the property of the government on the second Monday of January of that year. In the standing timber the Winton Lumber Company then had no title or equitable interest. The title being in the government, the property was exempt from taxation under C. S., sec. 3099, subd. 1. This exemption continued through the fiscal tax year. (*Clearwater Timber Co. v. Nez Perce County, supra.*) The same conditions obtain regarding the logs assessed for 1930.

The whole undisputed evidence appears to us to be *contra* to the finding that the appellant Winton Lumber Company was the owner or equitable owner of said property on the second Monday of January in the year in which such assessments were made. It follows the judgments must be re-

versed, with directions to grant appellant relief in accordance with this opinion, and it is so ordered, with costs to appellant.

Givens, C. J., and Budge, Lee and Varian, JJ., concur.

ON PETITION FOR REHEARING.

(January 3, 1931.)

McNAUGHTON, J.—█ A petition for rehearing is asked as to the injunction suit, on the ground that it involved 2,000,000 feet of logs the company contemplated cutting in 1930 under the contract of February 18, 1929. The agreement of the lumber company to purchase did not vest title in it, equitable or otherwise, to the standing timber. Title to logs under the terms of that agreement would not vest until paid for, scaled and measured. None of these conditions obtained as to this 2,000,000 feet of timber on the second Monday of January, 1930. At the close of 1929 there was a balance to the credit of the lumber company of about a thousand dollars on the 1929 operations. On April 3, 1930, the company made a substantial payment. It then advanced $8,000 on account of the 2,000,000 feet it contemplated cutting that year. This timber, like the timber cut the year before, was on the second Monday of January the property of the government, exempt on that date and throughout the year. The petition for rehearing is denied.

Givens, C. J., and Lee and Varian, JJ., concur.