## WIGGINS FERRY COMPANY v. EAST ST. LOUIS.

1. The fourth section of the act of the legislature of Illinois passed in 1819, touching a ferry across the Mississippi River from a place in Illinois to the city of St. Louis, Missouri, declares: "That the ferry established shall be subject to the same taxes as are now, or hereafter may be, imposed on other ferries within this State, and under the same regulations and forfeitures." *Held*, that the section provides for equality of taxation; that is to say, that the property of the ferry company shall be valued and taxed by the same rule as other like property, and be subject to the same exactions and forfeitures, but the company is not exempted from any license tax on its ferry-boats which the State or a municipal corporation thereunto authorized might impose.

2. The power to license is a police power, although it may also be exercised for the purpose of raising revenue.

3. A State has the power to impose a license fee, either directly or through one of its municipal corporations, upon the ferry-keepers living in the State, for boats which they own and use in conveying from a landing in the State passengers and goods across a navigable river to a landing in another State.

4. The levying of a tax upon such boats, although they are enrolled and licensed under the laws of the United States, or the exaction of a license fee by

the State within which the property subject to the exaction has its *situs*, is not a regulation of commerce within the meaning of the Constitution of the United States, nor is such tax or fee a duty of tonnage if it be not graduated by the tonnage of the boats or by the number of times they cross the river or land within the limits of the State.

ERROR to the Supreme Court of the State of Illinois.

This was an action of debt brought in the City Court of East St. Louis, St. Clair County, Illinois, by the city of East St. Louis against a corporation of the State of Illinois, known as the Wiggins Ferry Company, to recover from it license money imposed by an ordinance of the city. The Ferry Company pleaded *nil debet*. By consent of parties the cause was submitted to the court on an agreed statement of facts, which is as follows : —

Under and by authority of an act of the legislature of Illinois, entitled " An Act to authorize Samuel Wiggins to establish a ferry upon the waters of the Mississippi," approved March 2, 1819, and amendatory acts, Wiggins and his associates did establish, maintain, and operate a ferry upon and over the Mississippi River, between the city of St. Louis, in the State of Missouri, and the Illinois shore of the river opposite to the city of St. Louis, now within the limits of the city of East St. Louis, from about the time of the passage of the act of 1819, until the organization of the Wiggins Ferry Company in the year 1853, under and by authority of an act of the legislature, entitled " An Act to incorporate the Wiggins Ferry Company," approved Feb. 11, 1853. In the year 1853, under authority of said act of 1853, the successors, heirs, and assigns of Samuel Wiggins, the then owners of the ferry and ferry franchise, and of all the rights, privileges, and immunities granted to Samuel Wiggins and his successors, heirs, and assigns, by proper deeds and assignments conveyed the same to defendant, they having become the stockholders of said ferry company, and from thence hitherto defendant has remained the lawful owner of said ferry, ferry franchise, rights, privileges, and immunities, including the ferry-boats, wharf-boats, wharves, and landings in use by said ferry, and the rights, privileges, immunities, and franchises granted by said act of 1853 and amendatory acts, and under and by authority of all said grants,

franchises, rights, privileges, and immunities defendant has maintained and operated said ferry from thence hitherto. The Mississippi River, at the point between the States of Illinois and Missouri, upon and over which the said ferry is established and operated, has, under the laws of the United States and the rules and regulations established thereunder, by the duly authorized officers of the United States, been declared to be, and is, a navigable river within the purview of such laws; and under said laws, rules, and regulations, and especially in conformity to the Revised Statutes of the United States, title L, "Regulation of vessels in domestic commerce," the defendant for the last twenty years and more has been required to, and has had all its ferry-boats, all of which are more than twenty tons burthen, regularly enrolled and annually inspected and licensed, at an annual cost of from seventy-five dollars to one hundred dollars per boat, according to tonnage and number of men employed on each. The defendant ever since its organization has paid to the county of St. Clair, as a ferry license, the sum of $300 per annum, under the laws of Illinois and the requirements of the county authorities; and has owned the wharves and landing used by said ferry in the city of East St. Louis, which is graded and paved at its own expense, and it has never used or employed any wharf or landing belonging to the city of East St. Louis. Defendant ever since its organization has annually listed for taxation and paid all taxes legally assessed upon all its property; all its personal property, including its boats and franchise, and all its real estate which is situated within the city limits, and including its wharves and landings, having been taxed by said city of East St. Louis ever since the organization of said city.

The Illinois and St. Louis Ferry Company and the St. Louis and Cahokia Ferry Company own and operate ferries over and across the Mississippi River between the said city of St. Louis and the Illinois shore, but without the limits of the city of East St. Louis, both in active competition with the ferry of defendant, neither of which is or ever has been required to pay any sum whatever for license to either the city of East St. Louis or any other municipal corporation except the county of St. Clair, to which they both pay license fees.

The St. Louis Bridge Co., which owns and operates a bridge over the Mississippi River between said cities of St. Louis and East St. Louis, which has been in active competition with defendant ever since said bridge was opened for use in July, 1874, is required to pay no license fee whatever to the city of East St. Louis. On June 1, 1868, the city council of the city of East St. Louis duly passed and published "Ordinance No. 70," parts of which are as follows: —

"SECT. 1. No person, firm, company, or corporation shall be engaged in, prosecute, or carry on any trade, business, calling, or profession hereinafter mentioned without first having obtained a license therefor.

. . . . . . . .

"SECT. 10. Keepers of ferries shall pay fifty dollars license for each boat plying between this city and the opposite bank of the river for one year, or twenty-five dollars for each boat for six months."

In compliance with the above ordinance defendant paid said city a license fee of fifty dollars per annum on each of its ferryboats, its last license thereunder being from May 1, 1874, to May 1, 1875.

On Oct. 7, 1878, said city council passed ordinance No. 317, which is substantially the same as ordinance No. 70, except that it fixes the license fee at $100 per annum for each boat. On May 1, 1875, and from thence hitherto, the defendant, in the operation of its ferry between said cities of St. Louis and East St. Louis, has employed eight ferry-boats (including two tugs and one transfer-boat), and since said May 1, 1875, has not taken out any license nor paid any license fee to said city of East St. Louis. Upon the facts here stated, and the laws applicable thereto, the court shall determine the right of plaintiff to demand and the liability of defendant to pay the license fee, fixed by said ordinance, or either of them, and render judgment accordingly, and this without regard to the pleadings in the case. The acts of the legislature, and the laws, rules, and regulations of the United States, and the enrolments, inspections, and licenses herein mentioned or referred to, and the charter and ordinances of said city of East St.

Louis, or copies thereof, may be used and referred to as a part of the record in this case.

So much of the act of 1819, referred to in the agreed statement of facts, entitled " An Act to authorize Samuel Wiggins to establish a ferry upon the waters of the Mississippi River," as is pertinent to this case, is as follows : —

" SECT. 1. That Samuel Wiggins, his heirs and assigns, be, and they are hereby, authorized to establish a ferry on the waters of the Mississippi near the town of Illinois, in this State, and to run the same from lands at the said place that may belong to him."

" SECT. 4. That the ferry established shall be subject to the same taxes as are now, or hereafter may be, imposed on other ferries within this State and under the same regulations and forfeitures."

So much of the act of Feb. 11, 1853, " to incorporate the Wiggins Ferry Company," as is material to this case, is as follows : —

After a preamble, which recited the above-mentioned act of 1819 and acts amendatory thereof, it was enacted : —

" SECT. 1. That (certain persons, naming them), and their associates, successors, and assigns, are hereby created a body corporate and politic by the name and style of the ' Wiggins Ferry Company,' . . . and the said company shall have full power . . . to purchase, hold, use, and enjoy the ferry franchise granted to Samuel Wiggins, his heirs and assigns, by the act referred to in the preamble of this act, . . . to keep a ferry or ferries at and from any point or points on said land, across the Mississippi River to St. Louis, in the State of Missouri, and use and enjoy all the rights, privileges, franchises, and emoluments recited in the preamble of this act as having been heretofore granted to the said Samuel Wiggins, his heirs and assigns."

" SECT. 7. . . . *Provided*, that nothing in this act contained shall be construed to create any private right so as to interfere with the powers of any existing municipal corporation, or with the right of the legislature, at any time hereafter, to create municipal corporations within the limits herein specified, and to confer upon said corporations all such powers of police . . . as may be usually or properly confided to a city corporation under the Constitution of Illinois."

The authority to pass the ordinance under which the plaintiff claimed license money from the defendant was its charter, passed in 1869, which empowered it " to regulate, tax, and license ferry-boats." Private Laws of Illinois, 1869, vol. i. p. 893.

Upon these facts the court found the issues for the plaintiff, and assessed its damages at $1,600, for which sum it rendered judgment against the defendant.

The case was taken by the appeal of the defendant to the Appellate Court of the Fourth District of Illinois, and the judgment of the City Court of East St. Louis was affirmed. The defendant then carried the case, by appeal, to the Supreme Court of Illinois, which affirmed the judgment of the Appellate Court.

To obtain a reversal of this judgment of the Supreme Court, the defendant brought this writ of error.

*Mr. H. P. Buxton* for the appellant.

*Mr. M. Millard*, *Mr. J. M. Freels*, and *Mr. B. H. Canby* for the appellee.

MR. JUSTICE WOODS delivered the opinion of the court.

The first contention of the plaintiff in error is that the fourth section of the act of 1819, which declared that the Wiggins Ferry should be subject to the same taxes as were then or might thereafter be imposed on other ferries within the State, and under the same regulations and forfeitures, and the charter of the Wiggins Ferry Company, which authorized said company to use and enjoy the ferry franchise granted to Samuel Wiggins, and to use and enjoy all the rights, privileges, and emoluments recited in the preamble of the act as having been granted to Wiggins and his heirs and assigns, constituted a contract between the ferry company and the State, by which the power to tax the ferry company was limited to the imposition of the same taxes as were then or might thereafter be imposed on other ferries within the State; and that the charter of the city of East St. Louis, which authorized the city to regulate, tax, and license ferry-boats, and the ordinance of the city imposing a license tax on the ferry-boats of the company, impaired the obligation of the contract, and was therefore unconstitutional and void.

We are of opinion that the charter of the company cannot be so construed as to exempt it from any taxation which the State might itself see fit to impose or authorize to be imposed by the city of East St. Louis.

It is a rule of interpretation that every grant from the sovereign authority is, in case of ambiguity, to be construed strictly against the grantee and in favor of the government. *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420 ; *Mills* v. *St. Clair County*, 8 How. 569 ; *Attorney-General* v. *Boston*, 123 Mass. 460.

This rule has been frequently applied by this court in cases where exemption from taxation was set up by corporations under the provisions of their charters. In *Philadelphia & Wilmington Railroad Co.* v. *Maryland*, 10 How. 376, it was declared that " the taxing power of a State is never presumed to be relinquished unless the intention to relinquish is declared in clear and unambiguous terms ; " and in *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436, it was said that " the language of this court has always been cautious and affirmative of the right of the State to imposes taxes, unless it has been relinquished by unmistakable words, clearly indicating the intention of the State to do so."

So in *Railroad Company* v. *Commissioners*, 103 U. S. 1, the Chief Justice, speaking for the court, declared : " Grants of immunity from taxation are never to be presumed. On the contrary, all presumptions are the other way, and, unless an exemption is clearly established, all property must bear its just share of the burdens of taxation. These principles are elementary and should never be lost sight of in cases of this kind." To the same effect see *Railroad Companies* v. *Gaines*, 97 id. 697.

So in *Bank* v. *Tennessee*, 104 id. 493, this court declared, speaking by Mr. Justice Field : " That statutes imposing restrictions upon the taxing power of a State, except so far as they tend to secure uniformity and equality of assessment, are to be strictly construed is a familiar rule. Against the power nothing is to be taken by inference and presumption. When a doubt arises as to the existence of the restriction, it is to be decided in favor of the State."

If any serious doubt could arise concerning the interpretation of sect. 4 of the act of 1819, which the plaintiff in error contends was incorporated as a provision of its charter, the authorities cited would settle that doubt in favor of the right of the city of East St. Louis to impose the license tax complained of.

But we are of opinion that the meaning of the section is not doubtful. The ferry of Wiggins had only one of its landings in the State of Illinois; the other was in the State of Missouri. The evident purpose of the section was to prevent the ferry, by reason of that circumstance, from escaping the same burdens of taxation as were imposed on ferries entirely within the State and not to limit the taxing power of the legislature. It declares that the ferry of Wiggins shall be subject to the same taxes which were then or might thereafter be imposed on other ferries within the State, and under the same regulations and forfeitures, but it does not intimate that the State shall not impose on it such other taxes within its constitutional power as to it may seem fit.

The most favorable construction for the plaintiff in error that could be placed upon its charter is that it provided for equality of taxation, that is to say, that the property of the ferry company should be valued and taxed by the same rule as other like property, and that the same exactions and forfeitures only as were imposed on like property, similarly situated, should be imposed on it. It certainly cannot be contended that its ferry on one of the great arteries of commerce, crossing the Mississippi River, and having each of its landings in a city, should only pay the same identical taxes and license fees as a country ferry over an inconsiderable stream. All that could be reasonably claimed under its charter is that it should be subjected to no higher State and municipal taxation and no greater license fees than other like property similarly situated. Giving the charter this construction, the plaintiff in error has no ground of complaint. It is not shown that the State and county taxation bears unequally on the ferry company. The ordinance of the city of East St. Louis makes no discrimination in favor of any other ferry similarly situated which it is authorized to regulate, tax, and license. The same license fee is

exacted of all keepers of ferries within the corporate limits as are imposed upon the plaintiff in error.

But the contention of the plaintiff in error seems to be that, under the terms of its charter, it is exempted from the imposition by the city of East St. Louis of any license fee whatever. So far from this being the fact, the charter, by the proviso to sect. 1, expressly reserved the power of any existing municipal corporation, or any that might be thereafter created within the limits of the ferry company's lands, to exercise all such powers of police as might be properly conferred on a city corporation. The power to license is a police power, although it may also be exercised for the purposes of raising revenue. We cannot say, as a matter of law, that when a municipal corporation is authorized "to regulate, tax, and license ferry-boats," the imposition of a license fee of $100 per boat is not within the power to regulate and license, and is consequently not within the police power.

It follows, therefore, that the ordinance of the city of East St. Louis and the charter of the city, by which the ordinance is authorized, do not impair the obligation of any contract between the ferry company and the State.

The next question presented by the assignments of error relates to the power of the State to impose a license fee either directly or through one of its municipal corporations upon the keepers of ferries living in the State, for boats owned by them and used in ferrying passengers and goods from a landing in the State, across a navigable river, to a landing in another State. It is insisted by the plaintiff in error that such an exaction is forbidden by the Constitution of the United States, 1, because it is a regulation of commerce between the States, and, therefore, within the exclusive power of Congress; and, 2, because it is a duty of tonnage, which the States are forbidden by the Constitution to lay without the consent of Congress.

In our opinion neither of these contentions is well founded. The levying of a tax upon vessels or other water-craft or the exaction of a license fee by the State within which the property subject to the exaction has its *situs*, is not a regulation of commerce within the meaning of the Constitution of the

United States. *Gibbons* v. *Ogden*, 9 Wheat. 1 ; *Passenger Cases*, 7 How. 283 ; *Morgan* v. *Parham*, 16 Wall. 471. In *Gibbons* v. *Ogden* it was settled that the clause of the Constitution conferring on Congress the power to tax, and the clause regulating and restraining taxation, are separate and distinct from the clause granting the power to Congress to regulate commerce. In all of the cases just cited the right of a State to tax a ship owned by one of her citizens and having its *situs* within the State, although used in foreign commerce or in commerce between the States, was distinctly recognized. Thus, in *Passenger Cases*, it was said by Mr. Justice McLean : " A State cannot regulate foreign commerce, but it may do many things which more or less affect it. It may tax a ship or other vessel used in commerce the same as other property owned by its citizens. A State may tax the stages in which the mail is transported, but this does not regulate the conveyance of the mail any more than taxing a ship regulates commerce, and yet, in both instances, the tax on the property in some degree affects its use."

In the case of *Transportation Company* v. *Wheeling*, 99 U. S. 273, this court sustained a tax levied by the city of Wheeling upon steamboats used in navigating the Ohio River between that city and Parkersburg, and the intermediate places on both sides of the river in the States of West Virginia and Ohio, the company owning the boats having its principal office in Wheeling.

The exaction of a license fee is an ordinary exercise of the police power by municipal corporations. When, therefore, a State expressly grants to an incorporated city, as in this case, the power " to license, tax, and regulate ferries," the latter may impose a license tax on the keepers of ferries, although their boats ply between landings lying in two different States, and the act by which this exaction is authorized will not be held to be a regulation of commerce.

In the case of *Fanning* v. *Gregoire*, 16 How. 524, it was declared by this court, speaking of the charter of Fanning to ferry across the Mississippi River at Dubuque, that the exercises of the commercial power by Congress did not interfere with the police power of the States in granting ferry licenses.

And in the case of *Conway* v. *Taylor's Ex'rs*, 1 Black, 603, Mr. Justice Swayne, speaking .for the court, in reference to a ferry established across the Ohio River, between the States of Ohio and Kentucky,· declared that the power to establish and regulate ferries did not belong to Congress under the power to regulate commerce, but belonged to the States, and· lay within the scope of that immense mass of undelegated powers reserved by the Constitution to the States.

The ˙ authorities cited settle beyond controversy that the ordinance of the city of East St. Louis imposing upon the keepers of ferries within its limits, and the act of the legislature by which such ordinance was authorized, do not invade the exclusive power of Congress to. regulate commerce conferred on it by the Constitution.·

It is next insisted by plaintiff in error that the· license fee exacted by the ordinance of the city of East St. Louis is a tonnage tax, which the States are forbidden to lay without the consent of Congress. This contention has no ground to rest on. In the ·first place, the license fee is levied not on the ferry-boat, but on the ferry-keeper. The first ·section of the ordinance declares that no person shall carry on any trade, business, calling, or profession thereinafter mentioned without having first·obtained a license therefor, and the ordinance, after having enumerated many other trades and callings, and fixed the license fee for carrying them on, declares, in sect. 10, that keepers of ferries shall, pay $100 license fee for each boat plying between the city and the opposite bank of the river.

The power of the State of Illinois to authorize any city within her limits to impose a license tax on trades or callings generally, especially those which are *quasi* public, cannot be disputed. Draymen may be compelled to pay a license tax on every dray owned by them, hackmen on every hack, tavern-keepers on their taverns in proportion to the number of the rooms which they keep for the accommodation of guests. We · do not think that the Constitution of the United States, by the section which prohibits a State from laying a duty of tonnage, protects the keeper of a ferry from a similar tax upon. the boats which he employs. Whether a license fee is exacted

under the power to regulate or the power to tax is a matter of indifference if the power to do either exists. The license fee exacted is, in effect, laid upon the business of keeping a ferry; for it is not laid upon all boats owned by the ferry-keeper, but only on those plying between the two banks of the river, and is graduated by the number of boats used by him.

The exaction of this license fee is identical in kind with the imposition upon a proprietor of hacks and express wagons of a specified sum for every vehicle owned by him and used in carrying passengers or baggage and merchandise from East St. Louis to the city of St. Louis, by way of the bridge connecting those cities.

In the second place, the amount of the license fee is not graduated by the tonnage of the ferry-boats. It is the same whether the boats are of large or small carrying capacity. This, although not a conclusive circumstance, is one of the tests applied to determine whether a tax is a tax on tonnage or not. *Steamship Company* v. *Portwardens,* 6 Wall. 31; *State Tonnage Tax Cases,* 12 id. 204; *Peete* v. *Morgan,* 19 id. 581; *Cannon* v. *New Orleans,* 20 id. 577. If the same license fee had been exacted of the keeper of a ferry across a navigable stream entirely within the State of Illinois, Chicago River, for instance, it would scarcely be contended that it fell within the constitutional prohibition. The fact that in this case the ferry crosses a river which divides two States cannot change the nature of the exaction.

As we have already said, the burden imposed by the ordinance is not measured by the tonnage of the ferry-boats, it is not measured by the number of times they cross the Mississippi River or land at the city of East St. Louis. We are of opinion, therefore, that it is not a duty of tonnage, nor is it in its essence a contribution claimed for the privilege of using a navigable river of the United States or of arriving or departing from one of its ports, and is therefore not prohibited by the Constitution of the United States.

Counsel for plaintiff in error contend that if the power of the city of East St. Louis to exact a license fee of $100 from every ferry-boat is conceded, the city could double or treble the fee at will. It is sufficient to say, in reply to this, that it does not

follow from the fact that a power is liable to abuse, that it does not exist. If the power is abused, the remedy is with the legislature.

Lastly, it is contended by the plaintiff in error, that the fact that the boats of the ferry company have been enrolled, inspected, and licensed under the laws of the United States, is a protection against the exaction of any license fee by the State or by its authority.

In *Gibbons* v. *Ogden*, *ubi supra*, it was said by the court that inspection laws, quarantine laws, health laws of every description, as well as laws for regulating the internal commerce of a State, and those which respect turnpike roads, ferries, &c., are parts of the immense mass of legislation which embraces everything within the territory of a State not surrendered to the general government. In the subsequent case of *Conway* v. *Taylor*, *ubi supra*, this court, relying as authority on the declaration just cited, held that the fact that Conway had caused his ferry-boat to be enrolled and licensed, under the laws of the United States, at the custom-house in Cincinnati, to carry on the coasting trade, did not authorize him to carry on the business of a ferry between Cincinnati and Newport, Kentucky, in disregard of the rights of Taylor, who had an exclusive license from the authorities of the State of Kentucky to ferry from the Kentucky to the Ohio side of the river.

The power of Congress to require vessels to be enrolled and licensed is derived from the provision of the Constitution which authorizes it "to regulate commerce with foreign nations and among the several States." We have already seen that this court, in *Fanning* v. *Gregoire*, *ubi supra*, has held that this right of Congress "does not interfere with the police powers of a State in granting ferry licenses."

These authorities show that the enrolment and licensing of a vessel under the laws of the United States does not of itself exclude the right of a State to exact a license from her own citizens on account of their ownership and use of such property having its *situs* within the State.

Counsel have argued other assignments, based on the construction given by the Supreme Court of Illinois to the Con-

stitution and laws of the State. As, in our opinion, all the Federal questions presented by the record were rightly decided by that court, it is not our province to consider these assignments. *Murdock* v. *City of Memphis*, 20 Wall. 590.

We find no error in the record.

*Judgment affirmed.*