**UNION SULPHUR CO. v. REID, Sheriff, et al.**

**No. 618.**

District Court, W. D. Louisiana, Lake Charles Division.

April 15, 1935.

On Rehearing Feb. 4, 1936.

Cullen R. Liskow, of Lake Charles, La., for complainant.

Gaston L. Porterie, Atty. Gen., Justin C. Daspit, Asst. Atty. Gen., and F. A. Blanche, Sp. Asst. Atty. Gen., E. L. Richardson, of Baton Rouge, La., and C. V. Pattison, of Lake Charles, La., for respondents.

Before HUTCHESON, Circuit Judge, and DAWKINS and BORAH, District Judges.

DAWKINS, District Judge.

Plaintiff has attacked the constitutionality of Act No. 6 of the Legislature of Louisiana, for the year 1932, under both the Federal and State Constitutions on the grounds hereinafter discussed. We quote sections 3, 6, 7, and 8 of the statute in question as follows:

"Section 3. In addition to all other taxes of every kind imposed by law, every person, firm, corporation or association of persons engaged in the State of Louisiana in any business or occupation, which person, firm, corporation or association of persons uses in the conduct of such business or occupation, at any time, electrical or mechanical power of more than ten horsepower and does not procure all the power required in the conduct of such business or occupation from a person, firm, corporation or association of persons subject to the tax imposed by Section 1 or Section 2 of this act, shall be subject to the payment of an excise, license or privilege tax of One Dollar ($1.00) per annum for each horsepower of capacity of the machinery or apparatus, known as the 'prime mover' or 'prime movers,' operated by such person, firm, corporation or association of persons, for the purpose of producing power for use in the conduct of such business or occupation; provided that any user of power securing all or any part of the power required in the conduct of the business or occupation of such user from a person, firm, corporation or association of persons subject to the tax imposed by Section 1 or Section 2 of this act, shall not be liable for the tax imposed by this Section 3, or for a greater tax under this Section 3, as the case may be, because of the employment of stand-by power facilities by such user during periods of failure of the supply of purchased power; and provided further that any person, firm, corporation or association of persons the principal use of whose electric facilities is the generation of electricity for sale, shall not be subject to an additional tax under this Section 3 on the horsepower capacity of any machinery or apparatus used in the generation of electricity; and provided further that in computing the tax imposed by this Section 3, there shall be excluded from the horsepower capacity of all machinery and apparatus operated, that part of such capacity used in a mechanical, agricultural or horticultural pursuit, or any other occupation exempt from a license tax under Section 8 of Article X of the Constitution of Louisiana, or in operating a sawmill or a mill for grinding sugar-cane or producing raw sugar, or in conducting any business of selling electricity or any business conducted under any franchise or permit granted by the State of Louisiana or any subdivision thereof, or in propelling or motivating any automobile, truck, tug, vessel, or other self-propelled vehicle, on land, water or air."

"Section 6. Every person, firm, corporation or association of persons subject to the tax levied in this act shall annually, between first day of August and the first day of September, make a true and correct return to the Supervisor of Public Accounts in such form as he may prescribe, showing the gross receipts derived from the sale of electricity manufactured and generated, and the gross receipts derived from the sale of electricity purchased, and the portion of said gross receipts derived from sales to a person, firm, corporation or association of persons for distribution and resale, and the value of electricity furnished to any branch of the business of such person, firm, corporation or association of persons, not operating under a franchise or permit from the State of Louisiana, or some subdivision thereof, or as the case may be, the horsepower capacity of the machinery or apparatus on which the tax imposed by Section 3 of this Act is computed, in each case during the twelve month period ending on the 31st day of July next preceding the making of such return, and shall pay the tax provided for in this Act, at the time said return is made.

All taxes imposed by this Act shall become delinquent on the 1st day of September.

"In case of failure to make a true and correct return, as provided in this section, the Supervisor of Public Accounts shall make such return, or cause the same to be made, upon such information as he may be able to obtain, assess the tax due thereon and add a penalty of twenty-five percent (25%) to the amount of the tax for failure of the taxpayer to make the return.

"That if the excise, license or privilege tax due as hereinabove provided is not paid at the time or in the manner specified, by the person, firm, corporation or association of persons owing the same, then the Supervisor of Public Accounts shall make in any manner feasible, and cause to be recorded in the mortgage records of the Parish where such person, firm, corporation or association of persons is engaged, occupied or continuing in a business or occupation subject to the tax imposed by this Act, a statement, under oath, showing the amount of the tax due by each such person, firm, corporation or association of persons, which statement when filed for record shall operate as a first lien, privilege and mortgage on all of the property of the respective excise, license or privilege tax debtors as the case may be, and said property shall be subject to seizure and sale for the payment of said excise, license or privilege tax due."

"Section 7. Whenever the Supervisor of Public Accounts shall cause the statement provided for in the preceding section to be recorded, he shall give notice to the tax debtor by registered letter of the recordation of such statement, and fifteen (15) days thereafter the said Supervisor of Public Accounts shall cause the sheriff and ex-officio tax collector of said parish to seize and sell for the payment of such excise, license or privilege taxes any property whatsoever belonging to the said tax debtor or debtors, as provided above, which may be found within the jurisdiction of the said sheriff and ex-officio tax collector."

"Section 8. The sheriff and ex-officio tax collector of any parish when requested by the Supervisor of Public Accounts, is hereby required to seize and sell any property, assets and effects belonging to any person, firm, corporation or association of persons owing the excise, license or privilege tax herein provided for after the recordation of the statement hereinabove provided and required and after the notice hereinabove provided for has been given; and all such seizures and sales shall be conducted in the manner and form now required for the sale of similar property for taxes and penalties shall be imposed and collected as provided by the general license laws of this State.

"Any and all physical property or assets or things of value belonging to the said tax debtors are hereby declared to be subject to seizure and sale for the payment of the excise, license or privilege tax herein provided for in preference to any and all other claims, liens and privileges."

Petitioner alleges that in the conduct of its business of drilling for the production of oil and gas, engines or "prime movers," as defined in said act, are used, and that it does not procure any part of its power from others subject to the tax imposed by section 1 of the act; that is, those engaged in the production of power for sale. It further alleges that on September 4, 1934, the supervisor of public accounts caused to be filed in the mortgage records of Calcasieu parish a statement for the period from August 1, 1932, to and including July 31, 1934, claiming $9,601.50 as due by petitioner, and on October 23d of the same year notified plaintiff, in accordance with section 7 of the act, that, unless the same was paid within fifteen days, she would cause the sheriff and tax collector to seize and sell the property of the defendant to satisfy said tax, penalties, and costs.

The grounds upon which the tax is assailed are as follows: (1) That, although called a license or excise tax, it is in reality an ad valorem or property tax, which exceeds the permissible limit fixed by section 3 of Article 10 of the State Constitution; and, (2) the procedure prescribed for its collection does not afford due process under the Fourteenth Amendment to the Federal Constitution.

Petitioner further alleges irreparable injury and that no provision exists under the law to recover the amount claimed if paid under protest.

Jurisdiction is invoked under section 266 of the Judicial Code (U.S.C. title 28, § 380 [28 U.S.C.A. § 380]).

Defendant has moved to strike paragraphs 8, 9, 10, 11, 15, subsection (a) of paragraph 21, subsections (a), (b), (c) of paragraphs 25 and 30 of the bill, on the

grounds that they amount to "conclusions of law" and "conclusions of fact," which are "contrary to the rules of pleading and practice of this court." They also answered admitting that the tax had been demanded and would be collected in the manner alleged, but otherwise in the main denied the conclusions of law and fact of the petition. They prayed that plaintiff's demand be rejected.

The application for preliminary injunction was heard by this statutory court of three judges on November 23, 1934, and on December 10th defendants filed a motion to dismiss, setting up a statute passed at an extra session of the State Legislature on December 6th of the same year (Act La. No.16 of 1934, 2d Ex.Sess.), as granting a right to sue the State to recover back the taxes if found to have been illegally paid, and which it is claimed provides an adequate remedy at law.

We find nothing to sustain the contention that plaintiff could not allege or quote the provisions of the statute assailed, or that the conclusions of law or fact were improperly pleaded. No authority has been cited in support of the contention and the motion will be denied.

■ As to the act of the Legislature of December 6th, passed after the filing and submission of the case, there was no such remedy under the state law when the suit was filed, and the matter must be governed by conditions which existed at that time. If there was no adequate remedy then, the subsequent passage of the statute in question did not have the effect of divesting this court of the jurisdiction which it had acquired even if the act can be construed to afford such relief, as to which we express no opinion at this time. Beedle v. Bennet, 122 U.S. 71, 7 S.Ct. 1090, 30 L.Ed. 1074; Busch v. Jones, 184 U.S. 598, 22 S. Ct. 511, 46 L.Ed. 707; Dawson v. Kentucky Distilleries Company, 255 U.S. 288, 296, 41 S.Ct. 272, 275, 65 L.Ed. 638.

We find the pertinent facts as follows:

Plaintiff is engaged in drilling wells in this State in search of and for the production of oil, gas, and other minerals, and the "prime movers" or engines, whose horsepower forms the basis for the tax, are used exclusively for those purposes. It produces no power for sale, nor does it purchase any from any one else. It had been duly assessed and paid its property or ad valorem taxes, up to the full constitutional and statutory limit, upon the engines in question, and made no return as to the tax in contest, as required by the statute assailed. The supervisor determined a tax liability for the period in question of $9,-601.50, filed the statement in the mortgage records, caused the required notice to be sent, and would have proceeded with the enforced collection as provided by the statute but for the preliminary restraining order issued herein. At the time of filing this suit there was no provision in the act itself or otherwise in the state law under which the plaintiff could have paid the tax under protest and then sued for its recovery; but, since the writ was issued, the Legislature has passed an act purporting to give such a remedy.

## Conclusions of Law.

The general property tax is imposed and limited by section 3, article 10, of the State Constitution, which we quote, as follows:

"The rate of State taxation on property for all purposes shall not exceed, in any one year, five and one-quarter mills on the dollar of its assessed value; provided, the Legislature may, by a vote of two-thirds of the members elected to each house, increase such rate to not more than five and three-quarter mills on the dollar."

We also quote section 8 of Article 10, with respect to license taxes: "§ 8. [As amended by Act 77 of 1934.] License taxes may be levied on such classes of persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession, as the Legislature may deem proper, except clerks, laborers, ministers of religion, school teachers, graduated trained nurses, those engaged in mechanical, agricultural or horticultural pursuits or in operating saw mills. Such license taxes may be classified, graduated or progressive. No political subdivision shall impose a greater license tax than is imposed for State purposes, provided that this restriction shall not apply to dealers, in malt, vinous, distilled, alcoholic, spiritous or intoxicating liquors; but when an income tax is levied by the State, in lieu of State license taxes, this shall not prohibit the levy by the political subdivisions of the State of such license taxes as the Legislature may authorize. Those who pay municipal license taxes equal in amount to such taxes levied by the parochial authorities shall be exempt from such parochial license taxes."

As was said in Dawson v. Kentucky Distilleries Company, supra, the question of whether this is a property tax or a license tax is one of local law, the construction of which by the court of last resort of the state would be accepted by this court as conclusive. However, no such decision having been made, we are bound to determine this matter ourselves. In Lionel's Cigar Store v. McFarland, 162 La. 956, 111 So. 341, 344, the Supreme Court of Louisiana construed the statute imposing a license tax on tobacco and tobacco products, and, while some of the language of that statute gave it the appearance of a property tax, it was held to be a license tax "upon dealers," measured by the price or amount for which the merchandise was sold at retail. In the course of that opinion the court had this to say: "The incident or feature that makes the tax a license tax and not a property tax is that it is not levied on or collectable from the owner of the property unless he is *engaged in the business* of selling it at retail, and that it is levied and collected then only in proportion, approximately, to the amount of the retail sales." (Italics by writer of this opinion.)

To the same effect see Fleischmann Company v. Conway, 168 La. 547, 122 So. 845, wherein it was again found that the tax in reality was imposed upon "dealers in yeast."

The present statute, at the beginning of section 3, assailed here, says that the tax is imposed upon "every person, firm, corporation or association of persons engaged in the State * * * *in any* business or occupation, which * * * *uses* in the conduct of such business or occupation" such power. It would have meant the same thing, we think, if it had left the words "any business or occupation" out and simply said that the tax should be collected from any one using such power, for it is perfectly clear that the tax is not upon the business but upon the use of the power. This idea is further reinforced by the title, which, after declaring the object of the statute to be the "levying and excise, license or privilege tax on persons * * * engaged *in the* business of manufacturing or generating or selling electricity," adds, "and on persons * * * engaged in certain other businesses or occupations *using* electrical or mechanical power." The first clause of this title clearly expresses the purpose to impose a license tax upon one class of business, to wit, that of producing electricity for sale; whereas the succeeding clause states it is to·be imposed upon any one who uses power in any kind of business or occupation, regardless of its nature, save the excepted classes (where it is used in horticultural, mechanical, or agricultural pursuits which are exempted by section 8, art. 10, of the State Constitution, as amended from license taxes). There is patently no attempt to classify the many different kinds of businesses which may use such power or to grade the tax according to the volume or amount of business done or power consumed, as seems to be contemplated by section 8 of article 10 of the State Constitution, as amended, and as had been done uniformly in statutes imposing license taxes in the past.

As was also pointed out in Dawson v. Kentucky Distilleries Company, supra, the tax is imposed upon the one thing which makes the property valuable, to wit, its use, whether owned, leased, or what not; it may be owned, sold, or leased without incurring the tax, provided it is not used, but the moment any one uses it the tax becomes due and is subject to enforcement through the recording and execution of a lien against the machinery. The result is no different to what it would be if the tax were laid upon the number of cylinders or pistons. It is the same in amount whether the engine is used one hour or every day in the year, to wit, $1 per horsepower for the year.

Ad valorem taxes are levied upon specific property, usually assessed to the owner and collected through the summary process of seizure and sale. The present tax is required to be realized in the same way, and, in addition to the usual lien against the specific property resulting from the filing of the tax roll, there is created against all of the property of the tax debtor a similar lien, for the recovery of which suit is not to be brought as required with respect to other license taxes, but must be enforced in the manner above stated. We are therefore constrained to hold that it is a property tax.

We also think the act violates the due process clause of the Fourteenth Amendment to the Federal Constitution, in that it makes no provision for a hearing or review of the action of the supervisor in determining the tax, as will be seen from section 7, quoted above. It will be noted

that that section merely requires the giving of notice "of the recordation of such statement" after it has become a lien upon the property, "and fifteen (15) days thereafter" the supervisor must "cause the sheriff * * * to seize and sell" the property, with no provision anywhere in the act or any other law of the state for a hearing as to its correctness. To be of any value, the notice must have some purpose other than simply to permit the payment of the tax so determined to avoid the seizure of the property. When the amount has been determined in the manner provided by the statute, without previous notice and recorded, nothing is left to the supervisor but to give notice and enforce collection in the manner stated, for she is given no authority to hear or determine complaints by the taxpayer and hence no opportunity to be heard by the latter, Central of Georgia Railway Co. v. Wright, 207 U.S. 127, 28 S.Ct. 47, 52 L.Ed. 134, 12 Ann.Cas. 463; Jackson Lumber Company v. McCrimmon (C.C.) 164 F. 759; and, when the penalties are so severe "as to deter him, (the tax payer) from asserting that which he believed to be his right," this within itself is a denial of due process and the equal protection of the law, Wadley Southern Railroad Co. v. Georgia, 235 U.S. 651, 35 S.Ct. 214, 59 L.Ed. 405. The statute under consideration here imposes a penalty of 25 per cent. "for failure of the taxpayer to make the return," and the recordation of the statement creates a lien, not alone upon the machine or "prime mover," but "on all of the property * * * of the tax debtor," and is so harsh as to fall under the principle of the case just cited.

Our conclusion is that for the reasons stated a preliminary injunction should be granted.

### On Motion for New Trial.

After due consideration of the motion for a new trial in the above numbered and entitled cause, and in view of the decision of the Supreme Court of the State of Louisiana in the case of State ex rel. Gaston L. Porterie et al. v. H. L. Hunt, Inc., 182 La. 1073, 162 So. 777, 103 A.L.R. 9, involving similar issues, it is the opinion of this court that said motion should be granted, and it is accordingly so ordered.

### On Rehearing.

A rehearing was granted in this case because, after our original opinion was handed down, the Supreme Court of the State in State ex rel. Porterie et al. v. H. L. Hunt, Inc., 182 La. 1073, 162 So. 777, 103 A.L.R. 9, held the tax in question to be a license or privilege tax rather than a property tax, contrary to the conclusion reached by us at the first hearing. It also decided that the act levying the tax did not violate provisions of the State Constitution upon the same grounds as urged here. We are bound by those interpretations. Dawson v. Kentucky Distilleries Co., 255 U.S. 288, 296, 41 S.Ct. 272, 274, 65 L.Ed. 638. However, in argument and brief on the rehearing, counsel for complainant has contended that we are not bound by that decision, if the tax, in its operation and effect, is in reality a property tax, and it is our duty to examine it to see whether in its results it imposes the tax burden upon the thing itself. Plaintiff relies mainly upon the case of Dawson v. Kentucky Distilleries Co., supra, but in that case it was distinctly held that the question of whether the tax was a property or license tax, was "one of local law, so that a decision of it by the highest court of the state would be accepted by us as conclusive." Its validity had not been passed upon by the Kentucky court of last resort. Then again, as pointed out by the Louisiana Supreme Court, no use whatever could be made of the liquors without removal from the bonded warehouses, and before this could be done the tax had to be paid; whereas, under the Louisiana statute, the tax itself does not become due unless and until the engines are used in producing power, and then they are to be paid by whomever uses them, whether owner, lessee, or any one else. We do not find anything in the present case which justifies us in disregarding the interpretation put upon the law by the highest court of the State, and leave the tax in the category in which that court has placed it, to wit, an "excise," "license," or "privilege" tax.

The only remaining questions are as to whether the statute violates the provisions of the Federal Constitution, as alleged, guaranteeing due process and equal protection of the law.

The alleged basis of discrimination or denial of equal protection is, first, that it is a property tax which is not imposed upon those using such machinery in mechanical, agricultural, or horticultural pursuits, or in propelling vehicles or vessels upon land or water, or in the air; or upon

machinery using less than ten horsepower. As pointed out in the decision of the state court, such taxes may be imposed upon different classes of persons, and they do not violate the equal protection provision of the Federal Constitution, if there be a reasonable basis for distinction between such classes. In the present instance, the primary purpose of the statute appears to have been to impose a license tax upon the production and use of power. The first section makes a levy of 2 per cent. on those "engaged in the business of manufacturing or generating electricity for heat, light or power"; and section 2 imposes the same percentage upon those "engaged in the business of selling electricity not manufactured or generated by them"; whereas section 3 levies the tax complained of in the present case upon persons who use mechanical or electrical power "in the conduct of such business or occupation" as may be followed or pursued by them, and who do not "procure all of the power required" in the conduct of such business from the classes in sections 1 and 2. Thus there is a classification of the persons taxed as between those who manufacture, who sell, and who produce their own power, and the tax is equal upon all those who fall in each class. Section 8 of article 10 of the State Constitution, as amended, exempts from license taxes those engaged in manufacturing, agricultural, and horticultural pursuits, along with certain others, and it is well settled that a State may classify businesses, professions, or occupations for license tax purposes, and impose different kinds and rates upon each, or none if it sees fit, so long as there is sufficient difference to form a reasonable basis for classification. What has been done in this case, we think, in view of the holding of the state court that it is a license tax, comes within the purview of that doctrine. C.J. vol. 61, verbo Taxation, § 35.

■ A further consideration of the remaining issue of due process under the Federal Constitution convinces us that we were in error in holding that the method provided by the statute for collection did not afford the taxpayer an opportunity to be heard before paying the tax. The Supreme Court of the United States, in the case of McMillen v. Anderson, 95 U.S. 37, 41, 24 L.Ed. 335, in dealing with a similar statute, had this to say:

"Looking at the Louisiana statute here assailed—the act of March 14, 1873,—we feel bound to say, that, if it is void on the ground assumed, the revenue laws of nearly all the States will be found void for the same reason. The mode of assessing taxes in the States by the Federal government, and by all governments, is necessarily summary, that it may be speedy and effectual. By summary is not meant arbitrary, or unequal, or illegal. It must, under our Constitution, be lawfully done.

"But that does not mean, nor does the phrase 'due process of law' mean, by a judicial proceeding. The nation from whom we inherit the phrase 'due process of law' has never relied upon the courts of justice for the collection of her taxes, though she passed through a successful revolution in resistance to unlawful taxation. We need not here go into the literature of that constitutional provision, because in any view that can be taken of it the statute under consideration does not violate it. It enacts that, when any person shall fail to [or] refuse or [to] pay his license tax, the collector shall give ten days' written or printed notice to the delinquent requiring its payment; and the manner of giving this notice is fully prescribed. If at the expiration of this time the license 'be not fully paid, the tax-collector may, without judicial formality, proceed to seize and sell, after ten days' advertisement, the property' of the delinquent, or so much as may be necessary to pay the tax and costs.

"Another statute declares who is liable to this tax, and fixes the amount of it. The statute here complained of relates only to the manner of its collection.

"Here is a notice that the party is assessed, by the proper officer, for a given sum as a tax of a certain kind, and ten days' time given him to pay it. Is not this a legal mode of proceeding? It seems to be supposed that it is essential to the validity of this tax that the party charged should have been present, or had an opportunity to be present, in some tribunal when he was assessed. But this is not, and never has been, considered necessary to the validity of a tax. And the fact that most of the States now have boards of revisers of tax assessments does not prove that taxes levied without them are void. * * *

"But however that may be, it is quite certain that he can, if he is wrongfully taxed, stay the proceedings for its collection by process of injunction. See Fouqua's Code of Practice of Louisiana, arts.

296–309, inclusive. The act of 1874 recognizes this right to an injunction, and regulates the proceedings when issued to stay the collection of taxes. It declares that they shall be treated by the courts as preferred cases, and imposes a double tax upon a dissolution of the injunction.

"But it is said that this is not due course of law, because the judge granting the injunction is required to take security of the applicant, and that no remedial process can be within the meaning of the Constitution which requires such a bond as a condition precedent to its issue.

"It can hardly be necessary to answer an argument which excludes from the definition of due process of law all that numerous class of remedies in which, by the rules of the court or by legislative provisions, a party invoking the powers of a court of justice is required to give that security which is necessary to prevent its process from being used to work gross injustice to another."

See, also, Pullman Company v. Knott, 235 U.S. 23, 35 S.Ct. 2, 59 L.Ed. 105, wherein it was held, by failing to make the return required by the statute, the taxpayer had lost his right to be heard.

For the reasons assigned, the preliminary injunction should be denied.

Proper decree should be presented.