### ARKANSAS–LOUISIANA PIPE LINE CO. v. COVERDALE, Sheriff.

#### No. 615.

District Court, W. D. Louisiana, Monroe Division.

April 15, 1935.

Rehearing Granted July 26, 1935.

Blanchard, Goldstein, Walker & O'Quin and Robert Roberts, Jr., all of Shreveport, La., for complainant.

A. L. Davenport and J. B. Dawkins, both of Monroe, La., Gaston L. Porterie, Atty. Gen., and J. C. Daspit, Fred A. Blanche, and E. L. Richardson, all of Baton Rouge, La., for respondent.

Before HUTCHESON, Circuit Judge, and DAWKINS and BORAH, District Judges.

DAWKINS, District Judge.

In this case, identical provisions of the Act No. 6 of the Louisiana Legislature for the year 1932 are attacked as unconstitutional for the same reasons urged in the case of Union Sulphur Company v. Reid, Sheriff and Tax Collector et al. (D. C.) 17 F.Supp. 27, No. 618 in equity, this

day decided, and on the additional ground that they impose an undue burden upon interstate commerce. Defendant has filed an exception of nonjoinder, in that the supervisor of public accounts was a necessary and indispensable party defendant; and otherwise opposed the granting of the preliminary injunction upon the same grounds.

Decisions of the state court have repeatedly held that the validity of a tax may be contested against the sheriff and tax collector alone where he was proceeding to sell property in execution of a tax lien. Kansas City, S. & G. Railway Co. v. Skinner, 145 La. 25, 81 So. 743; Louisiana & A. Ry. Co. v. Shaw, Tax Collector, 121 La. 997, 46 So. 994; Board of Trustees of Centenary College v. Hubbs, Sheriff, 128 La. 257, 54 So. 790; Budd v. Houston, 36 La.Ann. 959; see, also, United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171.

The plaintiff in this case, like the Union Sulphur Company in No. 618, failed or refused to make a return, and the supervisor determined the tax to be $7,316 for the period ending July 31, 1933, added thereto 25 per cent. penalties under the statute and 10 per cent. attorney's fees, recorded a statement thereof as provided by the statute, and had the sheriff seize and advertise the property of defendant for sale. The latter then filed suit in the state court, seeking to enjoin the sheriff and supervisor of public accounts from selling its property, alleged to be worth $800,000, upon substantially the same grounds as urged here. The latter excepted to the jurisdiction of the district court for Ouachita parish, on the ground that she should have been sued in the parish of East Baton Rouge, her official domicile, and the place where she discharges her duties. The exception to the jurisdiction was overruled by the trial court, and the supervisor applied to the State Supreme Court for a writ of prohibition, which was granted, with a stay order, and the trial judge was ordered to send the record up. This had the effect of releasing the sheriff and supervisor from the effects of the restraining order granted by the lower court, and they proceeded again with the advertisement of the property for sale; whereupon the plaintiff sought relief in this court in the present action. Upon the hearing by the Supreme Court of its supervisory writ thus granted, the stay order was recalled (after the present suit had been filed), and in passing upon the plea as to the jurisdiction the court has this to say (Arkansas-Louisiana Pipe Line Co. v. Coverdale, 181 La. 117, 158 So. 640, 641):

"The ruling of that court in maintaining its jurisdiction is sanctioned by reason and supported by precedent. Plaintiff is engaged in business in the parish of Ouachita and its property is there. The lien is recorded there and there it has effect against the property of the alleged debtor, and it is there that an attempt is being made to enforce it. The method set up by the act to enforce payment of the tax is the seizure and sale of the property of the tax debtor, and, if a sale is made, it must be made where the property is situated. In sum, the enforcement or execution of the lien which came into existence by virtue of the recorded sworn statement made by the supervisor of public accounts must take place in the parish of Ouachita, where the property is situated.

"It is alleged, and not denied, that if the sheriff of Ouachita parish is not restrained by the court, he will sell plaintiff's property, and it is alleged that a sale of plaintiff's property under this process will result in irreparable injury to it. It is manifest that plaintiff's only remedy was to enjoin the executing officer, the sheriff, from making the sale. The real object of the suit therefore was to obtain the injunction and the issue as to the validity of tax was raised by the injunction."

It then proceeded to cite and analyze numerous decisions, sustaining the jurisdiction of the lower court where the property was situated, and finally concluded:

"The reason for the rule is that when property is seized and about to be sold under process of this kind, the alleged debtor must arrest the sale in order to obtain relief, for if he allows his property to be sold and the tax collected, he has no remedy under the act to recover the amount, even if the tax should be held to be illegal. The suit for injunction is, therefore, the main demand and the invalidity of the tax is pleaded as a ground for the injunction. The court of East Baton Rouge parish, where the supervisor has her official domicile, would have no jurisdiction to arrest a sale about to take place in Ouachita.

"If the sole purpose of the suit had been to reduce the assessment made by the supervisor, or to correct it, the court at her domicile would have had jurisdiction, because she made the assessment there,

an^d, if a change should be made, she would have to make it there, and the suit should be brought where she performs her official functions. New Orleans G. N. R. R. Co. v. Thomas, Assessor, et al., supra [129 La. 128, 55 So. 737].

"But in this case, the supervisor did more than make the assessment; she caused it to be filed and recorded in the parish of Ouachita, where the property affected is situated, and caused the sheriff to seize and advertise it for sale."

We find the facts as follows:

Plaintiff is engaged in the transporting of natural gas purchased in this State from producers, and 96.6 per cent. of which is carried by pipe line into and sold in the States of Texas and Arkansas. The engines or "prime movers" are used in compressor stations for pumping said gas through its lines. Having failed to make a return, the supervisor determined the amount of the tax to be $7,316, added thereto the penalty of 25 per cent., as well as 10 per cent. attorney's fees on the whole, recorded a statement thereof in the mortgage records, and caused the sheriff and tax collector to seize and advertise for sale property valued at several hundred thousand dollars, in satisfaction thereof. Thereupon this suit was filed and a restraining order granted under the circumstances above set out.

The defenses are substantially the same as in the case of Union Sulphur Company v. Reid, Sheriff and Tax Collector (D.C.) 17 F.Supp. 27, this day decided.

### Conclusions of Law.

We are of the view that the tax is invalid for the reasons given in the opinion in the Union Sulphur Company Case, and also because it imposes an undue burden upon interstate commerce. The engines driving the pressure pumps which force the gas through the lines into other states are just as much instruments of interstate commerce as are the locomotives of an interstate railroad or the motive power of a ferryboat operating across a river separating two states. So that, even if the tax could be held a license tax, it could not be sustained as to the business in which plaintiff is engaged. Helson v. Kentucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683; Sprout v. South Bend, 277 U.S. 163, 48 S. Ct. 502, 72 L.Ed. 833, 62 A.L.R. 45; Gloucester Ferry Co. v. Pennsylvania, 114 U.S. 196, 5 S.Ct. 826, 29 L.Ed. 158; Pickard v.

Pullman Car Company, 117 U.S. 34, 6 S.Ct. 635, 29 L.Ed. 785. See, also, State Tax Commission v. Interstate Natural Gas Company, 284 U.S. 41, 52 S.Ct. 62, 76 L. Ed. 156; Pennsylvania v. West Virginia, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300; West v. Kansas Natural Gas Company, 221 U.S. 229, 31 S.Ct. 564, 55 L.Ed. 716, 35 L.R.A.(N.S.) 1193; Pennsylvania Gas Company v. Public Service Commission, 252 U.S. 23, 40 S.Ct. 279, 64 L.Ed. 434.

For the reasons assigned, the preliminary injunction will be granted.

### On Motion for New Trial.

After due consideration of the motion for a new trial in the above numbered and entitled cause, and in view of the decision of the Supreme Court of the State of Louisiana in the case of State ex rel. Gaston L. Porterie et al. v. H. L. Hunt, Inc., 182 La. 1073, 162 So. 777, 103 A.L.R. 9, involving similar issues, it is the opinion of this court that said motion should be granted, and it is accordingly so ordered.

### On Rehearing.

A rehearing was also granted in this case because of the decision of the Supreme Court of the State in State ex rel. Porterie et al. v. H. L. Hunt, Inc., 182 L^. 1073, 162 So. 777, 103 A.L.R. 9, holding the tax in question to be a license rather than a property tax. We are bound by that conclusion. Dawson v. Kentucky Distilleries Co., 255 U.S. 288, 296, 41 S.Ct. 272, 275, 65 L.Ed. 638. However, this still leaves in this case the question as to whether, as a license tax, it imposes an undue burden on interstate commerce. That natural gas, as well as crude oil, are commodities, which under proper circumstances become a part of such commerce, hardly needs the citation of authority. See West v. Kansas Natural Gas Company, 221 U.S. 229, 31 S.Ct. 564, 55 L.Ed. 716, 35 L.R.A. (N.S.) 1193; Pennsylvania Gas Co. v. Public Service Commission, 252 U.S. 23, 40 S.Ct. 279, 64 L.Ed. 434; Pennsylvania v. West Virginia, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300. As stated in our former opinion, the plaintiff purchases its gas from producers in the Monroe and Richland fields, which passes through gathering systems to its pumping station at Munce, whence it is transported by the pressure of the pumps or machinery whose horsepower is the subject of this license tax, to other states. From the mo-

ment of its acquisition through the meters in the field into the gathering lines, 96.6 per cent. of its volume starts on its journey by way of the pumping station and the 20-inch main into other states. The pumps or compressors are instrumentalities used to effectuate or accomplish that journey; in fact, without them transportation of the gas in required quantities when the rock pressure is low could not be made, since it is a substance which cannot be handled like crude oil, grain, etc. These engines, therefore, become the real and only motive power for its movement in interstate commerce. It is argued that the tax is laid upon the business of using or in business which uses power-producing engines rather than upon the machinery itself, and that contention was sustained by the state court to distinguish it from a property tax. Having thus determined it to be a license tax upon a business or occupation, then it would seem clear that the business of this defendant cannot be carved into separate parts and a tax imposed upon one of those parts without affecting the other. It is a single entity, to wit, the business of purchasing gas in one state and selling it in another, and, in order to do so, plaintiff must use this machinery as a means of transportation.

Much reliance is placed upon the case of Utah Power & Light Company v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038. However, the Supreme Court there found there was a distinction between the two operations of the defendant company, to wit, the manufacturing and transporting and sale of electrical power. The tax was levied upon the manufacturing. The plaintiff had a plant whose turbines were turned by water power, and which in turn converted that power into electrical energy before it was possible to transport it out of the State. The first operation, the court said, was manufacturing, subject to local regulation and state control, notwithstanding the energy after production was transmitted instantaneously over wires to other states. There is no such condition in the present case, as the gas is gathered and transported in its original state, just as a freight train might pick up carloads of cotton at stations on a railroad line and carry them into other states; and, if this tax can be imposed according to the number of horsepower of the engines, there could be no rational reason why it could not likewise be done on the basis of num-ber of feet or miles of pipe used. In State Tax Commission of Mississippi v. Interstate Natural Gas Company, 284 U.S. 41, 52 S.Ct. 62, 76 L.Ed. 156, the State had imposed a license or privilege tax "upon each person engaging and/or continuing in this state in the business of operating a pipe line or transporting in or through this state oil, or natural, or artificial gas, through pipes." (Laws Miss.1930, c. 88, § 163). The tax was measured and graded according to the number of miles and size of pipe so used. The gas was purchased from producers in Louisiana and transported and sold in Mississippi. The gas company sold to consumers in Louisiana from 70 to 75 million cubic feet per day and to those in Mississippi from 204 million to 520 million feet per day, and in holding the tax unconstitutional the Supreme Court, in part, had this to say:

"The gas flows continuously from the gas fields in Louisiana and obviously, for much the greater part at least, in interstate commerce. But the appellants rely upon business done under two similar contracts made in New York to show that there was intrastate commerce in Mississippi that may be taxed without burdening the main activity that the state cannot touch. * * * Distributing companies tap the plaintiff's pipes near Natchez and the town of Woodville. The gas withdrawn by the distributors is measured by a thermometer and a meter furnished by the plaintiff, which is the only way in which it can be measured. The pressure of the gas is reduced by the plaintiff before it passes into the purchaser's hands. The work done by the plaintiff is done upon the flowing gas to help the delivery, and seems to us plainly to be incident to the interstate commerce between Louisiana and Mississippi. The plaintiff simply transports the gas and delivers it wholesale, not otherwise worked over than to make it ready for delivery to the independent parties that dispose of it by retail."

The judgment of the lower court holding the tax illegal as imposing an undue burden upon interstate commerce was affirmed. If a license tax, measured by the number of miles and size of the pipe used, constituted a burden upon the interstate commerce of transporting and selling the gas, how can it be said that a similar license tax, determined by the horsepower of the engines used in propelling it through such pipes, is not likewise a burden upon

such commerce? We are unable to see any distinction.

Another case which appears clearly applicable in principle is that of Cooney v. Mountain States T. & T. Co., 294 U.S. 384, 55 S.Ct. 477, 478, 79 L.Ed. 934. There the State of Montana imposed a license or occupation tax, upon every one "engaged in the business of operating or maintaining telephone lines and furnishing telephone service in the State * * * for each telephone instrument used, controlled and operated by it in the conduct of such business, based upon the number of telephone instruments owned, controlled and operated by it during all or any part of the calendar year," beginning at 10 cents per instrument and increasing according to the number so used, up to $1. The tax was assailed as imposing a burden on the interstate business of the plaintiff. Plaintiff owned 34,000 telephones, and of these "more than $10,000 have actually been used in interstate and foreign commerce; * * * plaintiff pays the usual property taxes in Montana and also the corporation license or occupation taxes, which are a percentage of its intrastate revenues." It was contended the tax was imposed solely upon intrastate commerce and that it did not burden interstate commerce. However, the court found that the manner in which the tax was imposed, based upon the number of instruments, a large proportion of which were used in interstate commerce, necessarily caused it to operate upon an instrumentality used in interstate commerce; and, since no means were provided in the law for separating the two kinds of business, that is, intra and inter state, it would have to be held invalid as a whole, when applied to the business of the plaintiff. Here again we can see no distinction between a license tax based upon the number of telephones used, regardless of the frequency thereof, or revenue produced, and a similar tax gauged according to the horsepower of engines likewise used for propelling natural gas through an interstate pipe line. There the telephones were used in the interstate commerce of communication; whereas, here, the engines are employed in the interstate transportation of natural gas to consumers in other states.

■ Our conclusion is that the tax assailed in the present case imposes an undue burden upon interstate commerce, and is therefore invalid as to this complainant. A preliminary writ of injunction should issue.

Proper decree should be presented.

HUTCHESON, Circuit Judge (Dissenting).

The primary purpose of the statute appears to have been to impose a license tax upon the production of power. It thus imposed not a property, but an excise or privilege, tax. Union Sulphur Co. v. Reid (D.C.) 17 F.Supp. 27, this day decided. State ex rel. Porterie v. Hunt, 182 La. 1073, 162 So. 777, 103 A.L.R. 9; Bromley v. McCaughn, 280 U.S. 124, 50 S.Ct. 46, 74 L.Ed. 226.

The majority concludes that, because the tax is a privilege, and not a property, tax, and falls on the generation by complainant of power, used in part to gather gas into and in part to transport it through its transportation lines, it is a direct and undue burden on interstate commerce. I do not think so.

The majority considers the tax a license tax upon the business or occupation of transporting gas in interstate commerce; that is, the business of purchasing gas in one State and selling it in another. I do not think so. If I could agree that the tax was occupational, levied on the general business of complainant, that of acquiring and conducting gas interstate, I could agree with the majority that the case is ruled by Cooney v. Mountain States T. & T. Co., 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934, and that the tax is invalid. I cannot, however, agree to this. I think it quite plain that the tax is not imposed on complainant as a license tax, for the general privilege of transacting its business. It is exacted as a specific privilege tax, for the privilege of generating power in the State. It does not at all fall upon or condition its privilege of conducting the business of transporting gas interstate.

In the Cooney Case this distinction is made clear. There it is said: "There is no question that the state may require payment of the occupation tax from one engaged in both intrastate and interstate commerce." Cf. East Ohio Gas Co. v. Tax Commission, 283 U.S. 465, 51 S.Ct. 499, 75 L.Ed. 1171: "But a state cannot tax interstate commerce; it cannot lay a tax upon the business which constitutes such commerce or the privilege of engaging in it."

The statute under attack here does not undertake to, it does not, lay a tax upon

the business which constitutes interstate commerce, or the privilege of engaging in it. It exacts of complainant, who is engaged in both intra and inter state commerce, as well as of all others in the State of Louisiana similarly situated as to the use of prime movers, a privilege tax upon the generation power in Louisiana. The uses of that power are not taxed. The business in which the power is generated is not taxed. The generation of the power, and that alone, is taxed. The measure of it is the horsepower capacity of the "prime movers" employed to generate it.

The majority regards as inapplicable Utah Power & Light Co. v. Pfost, 286 U. S. 165, 52 S.Ct. 548, 76 L.Ed. 1038. I think that case controlling. There the generation of electrical energy which was the subject of the tax was followed immediately by its transmission to other states. Here, as there, the tax is upon the production of energy. Here, as there, that production is taxable, for here, as there, the tax is laid on the manufacture or production of energy, and not on its transfer or conveyance to distant states. Here, as there, the tax is laid upon the generation of power as a distinct act of production, and without regard to its subsequent use. Here, as there, so far as complainant produced energy in Louisiana, its business is purely intrastate, subject to state taxation and control. It is only in transmitting gas across the state lines by the use of this power that defendant is engaged in interstate commerce.

Other cases supporting this view are Oliver Iron Mining Company v. Lord, 262 U.S. 172, 43 S.Ct. 526, 67 L.Ed. 929; Hope Natural Gas Co. v. Hall, 274 U.S. 284, 47 S.Ct. 639, 71 L.Ed. 1049; Coe v. Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715; cf. Federal Compress & Warehouse Co. v. McLean, 291 U.S. 17, 54 S.Ct. 267, 78 L. Ed. 622; Carson Petroleum Co. v. Vial, 279 U.S. 95, 49 S.Ct. 292, 73 L.Ed. 626; Schechter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.

I am also of the opinion that defendant is right in its contention that, if the tax may be held to be on interstate commerce, it falls on it, not directly, but indirectly, and therefore does not violate the commerce clause (Art. 1, § 8, cl. 3). Port Richmond & B. P. F. Co. v. Board of Chosen Freeholders, 234 U.S. 317, 34 S.Ct. 821, 58 L.Ed. 1330; Wiggins Ferry Co. v.

East St. Louis, 107 U.S. 365, 2 S.Ct. 257, 27 L.Ed. 419; State v. Albert Mackie Co., 144 La. 339, 80 So. 582; Krauss Bros. Lumber Co. v. Board of Assessors, 148 La. 1057, 88 So. 397; Baltic Mining Co. v. Massachusetts, 231 U.S. 68, 34 S.Ct. 15, 58 L.Ed. 127; Hump Hairpin Mfg. Co. v. Emmerson, 258 U.S. 290, 42 S.Ct. 305, 307, 66 L.Ed. 622.

When a tax is as here levied on all similarly situated, and in terms is not upon the business done, so that it appears on the face of the statute that "it is clear that it is not imposed with the covert purpose or with the effect of defeating federal constitutional rights." Hump Hairpin Mfg. Co. v. Emmerson, supra, it is not a prohibited burden on interstate commerce. It is a valid exercise of the power of the State to tax.

With respect, therefore, I dissent.